CURRIE and another, Respondents, vs. MICHIE, Executrix, Appellant.

*October 18—November 15, 1904.*

*Estates of decedents: Claims: Trial by court: Findings: Evidence: Fraud: Duress: Compounding felony: Appeal and error: Witnesses: Transactions with person since deceased: Husband and wife: Material error.*

1. In an action on a claim filed against a decedent's estate the evidence, stated in the opinion, is *held* to fail to establish fraud or duress, or that consideration for the claim was the compounding of a felony.
2. In an action tried by the court, the improper admission of evidence is not available as error on appeal.
3. In such case, it is sufficient that evidence properly admitted supports the findings.
4. Where a party is called under sec. 4068, Stats. 1898, as an adverse witness and examined as to transactions and communications had with a person since deceased, in respect to such matters, the examination opens the door to the admission of the testimony of the adverse party.
5. Where a married woman is a party in the capacity of an executrix, it is not error to exclude the testimony of her husband, who was offered as a witness generally in the case and not as her agent.
6. In an action tried by the court, it is not material error to refuse to strike out testimony that is without probative force, or to sustain objection to a question calling for nothing material to the issues in the case.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Affirmed.*

It appears from the record that William S. Fraser died testate July 22, 1899; that his will was admitted to probate, and his daughter, *Isabelle Michie,* was duly appointed as executrix of the will; that October 31, 1899, the firm of Currie Bros. presented a claim against the estate for $1,000, with interest at seven per cent. from May 1, 1894—the same being the balance due on a note of $1,774.75 executed by the deceased August 28, 1893, and upon which had been paid by the deceased $858.61, leaving the balance mentioned. The executrix objected to such claim on the ground that it was given without consideration, and that said deceased was induced to sign said note by fraud and duress, and threats of Currie Bros. that unless he gave the same they would prosecute his son, James A., for embezzling upwards of $4,000 while he was in their employ. The executrix also answered by way of counterclaim to the effect that at the time of giving said note the said deceased was induced by fraud, duress, and such threats of prosecution to surrender to Currie Bros. a duebill executed by them August 31, 1887, and for which she claimed $2,225.25, and also the $858.61, so paid on the note of $1,774.75. Currie Bros., by way of reply, put in issue the allegations of the counterclaim. The county court allowed such claim of Currie Bros., and on appeal to the circuit court the cause was tried therein *de novo,* and at the close of the trial the court found, in addition to the facts stated, as matters of fact, in effect: (1) That prior to February 3, 1893, James A. Fraser became indebted to Currie Bros. in a sum exceeding $4,000 of their moneys taken by him while in their employ without their knowledge or consent. That upon the discovery of such embezzlement by Currie Bros. on the day and year last named, and confronting James A. Fraser with the fact, he admitted the same, and

proposed to pay what he could realize upon the sale of certain lots, and secure the balance, and for the purpose of securing the same he obtained from his father and delivered to Currie Bros. Exhibit 2, which reads:

"Milwaukee, February 10th, 1893.

"I hereby stand security to the amount of $4,000.00 for James A. Fraser to the firm of Currie Brothers pending examination of their books, the said examination to be completed as soon as possible.

"[Signed] WILLIAM S. FRASER."

There is written across the face of this instrument: "Returned and canceled August 28th, 1893, as per agreement of that date." And that, in procuring the same, Currie Bros. had no communication with the deceased relating to such claim against James A. Fraser, and made no threat of prosecution to him or to James A., and James A. in no manner led his father to believe that he was liable to be prosecuted for such embezzlement, and that the deceased executed Exhibit 2 freely and voluntarily as such security. (2) At the time of giving Exhibit 2, Currie Bros. were indebted to the deceased on the duebill mentioned, signed by them August 31, 1887, for $2,150 with interest at seven per cent., no part of which had been paid, except a portion of the interest. (3) August 28, 1893, there was due to the deceased from Currie Bros. on that duebill, for principal and interest, $2,225.25, and that upon the last-named day and year Currie Bros. and the deceased met, and settled and agreed upon $4,000 as the amount which, pursuant to Exhibit 2, the deceased should pay to Currie Bros. That, as a part of such payment, the deceased was to surrender to Currie Bros. the duebill, and that the amount then due thereon of $2,225.25 should be deducted from the $4,000, leaving a balance for which the deceased then and there gave his note of $1,774.75 to Currie Bros., payable May 1, 1894, and that such settlement was the free and voluntary act of the deceased without

any fraud, duress, or compulsion. (4) May 9, 1894, the de-
ceased freely and voluntarily, and without fraud, compulsion,.
or duress, and without any threat or promise, paid to Currie
Bros. upon said note $858.61, leaving the balance of $1,000·
so filed as a claim against the estate of the deceased. (5) No
other payment has ever been made upon said note, and there·
is due thereon $1,000, with interest at seven per cent. from;
May 1, 1894. (6 and 7) The allegations in the answer to·
the effect that the note was given by the deceased without con-
sideration and by fraud and duress are not proven, and are·
not true. (8) The allegations of the counterclaim are not;
proven, and are not true.

As conclusions of law the court found, in effect, that Cur--
rie Bros. are entitled to judgment against the estate of the·
deceased for $1,000, with interest thereon at seven per cent..
from May 1, 1894, and their costs and disbursements in this;
action, and also judgment dismissing the counterclaim al--
leged in the answer, and ordered judgment accordingly..
From the judgment so entered, the executrix brings this ap--
peal.

*John S. Maxwell* and *Joseph B. Doe,* for the appellant.

For the respondents there was a brief by *Turner, Pease &
Turner,* and oral argument by *W. J. Turner.*

CASSODAY, C. J.   It is undisputed that James A. Fraser·
was in the employ of Currie Bros. February 3, 1893, and had'
been for some years. On or about that date Currie Bros. dis--
covered that James A. had for some time been appropriating:
their money to his use, without their knowledge or consent,.
to the extent of $4,000 and upwards. When confronted with·
the fact of such discovery, James A. admitted that he had so·
converted the moneys of the firm to his own use to the extent
mentioned. James A. was at the time about thirty-three
years of age, and his father was about seventy-seven years of·
age. He was told by Currie Bros. that they wanted their·

money back or security, and they finally agreed that, if James A. would give them security for $4,000, it would be satisfactory. James A. thereupon went to his father and told him the circumstances, whereupon his father told James A. to write out a paper, and he would sign it; and he then wrote Exhibit 2, dated February 10, 1893, set forth in the statement of facts, and called the "guaranty," and his father then signed it, and James A. delivered it to Currie Bros. the next day, or within a day or two, as stated in the findings. There is no claim nor pretense that the deceased did not sign that guaranty freely and voluntarily, and without any fraud, duress, or threat of prosecuting James A. by Currie Bros. The same is true as to the $4,000 note which the evidence on the part of the plaintiffs tends to prove was about the same time drawn up by James A. at the house of his father, and then signed or indorsed by himself and his father, and then by him delivered to Currie Bros., and by them subsequently lost. The defendant denied the existence of any such note, and the findings fail to determine the question, but its determination does not seem to be very material.

The important question upon which the case must turn is whether the settlement of August 28, 1893, was valid and binding upon the deceased. There is certainly strong evidence tending to prove that the deceased was induced to make that settlement to prevent Currie Bros. from instituting criminal proceedings against James A. on account of such embezzlement. Such evidence is to the effect that about a month prior to the settlement *James Currie* called at the house of the deceased, and went upstairs and into his bedroom, and remained there with the deceased about an hour, with the door closed, and during the time talked in a loud and excited manner about James A. and security, which was heard by those outside, and that when *James Currie* left the bedroom he came down stairs alone, and passed out without speaking to any one. After the discovery of the embezzlement, Mr. Moses

H. Brand, an attorney at law, was employed by the deceased'
to investigate the matter; and he testified to the effect that a:
short time before the settlement he was told by Currie Bros..
that, if they could not get their money back, they would in--
sist upon having criminal action against James A.; that the·
parties met at his office pursuant to agreement to make such
settlement August 28, 1893; that at that time *James Currie·*
and the deceased, after some talk, arranged that the deceased'
should surrender to Currie Bros. the duebill he held against:
them, of $2,150, which, with the interest, then amounted to·
$2,225.25, and give to Currie Bros. his note for the balance·
of the $4,000, which amounted to $1,774.75; that he then
drew the note which was signed by the deceased, and at the·
request of the deceased he drew the contract or receipt, to the,
effect stated, and also stated:

"In consideration of the above payment it is understood'
and agreed that criminal proceedings will not be instituted'
by us against said James Fraser for the above or any ·other·
amounts of money taken by him or for any other sum of
money which may have been taken by him."

That he then added at the suggestion of *Mr. Currie* a pro--
viso to the effect that, if they should thereafter discover that·
James A. had wrongfully taken from them any sum in excess·
of the $4,000, then he was to give them his note therefor,.
and, if he should refuse, then nothing therein should prevent
them from taking criminal action against him; and that the·
language of the paper was his own. Such agreement bears·
date August 28, 1893, and is signed, ."Currie Brothers per·
*James.*" After a good deal of hesitancy, *Mr. Currie* virtually·
admits that his signature to the paper is genuine, but claims·
that he signed it without knowing its contents, and denies·
that there was any understanding that they were to refrain
from prosecuting James A. The court refused to find'
whether such written agreement was in fact made. It is diffi-
cult to believe that *Mr. Currie* did not know the contents of

the paper when he signed it, and yet there is no evidence that he read it or that it was read to him before he signed it, nor that the agreement not to prosecute, contained in the writing, was made in pursuance of any parol agreement or understanding between the deceased and Mr. Currie. Mr. Brand testified that it was impossible for him to give the details of the conversation between *Mr. Currie*, Mr. Fraser, and himself on that occasion. Of course, it was possible for *Mr. Currie* to believe that the paper he signed was a mere memorandum of the surrender of the one note and the giving of the other. Mr. Brand was a lawyer, and necessarily knew that no valid contract or agreement to compound a felony could be made. The deceased executed his will July 31, 1894, about eleven months after the settlement in question, and nearly three months after he had paid $857.86 on the note of $1,774.75. Mr. Brand was a subscribing witness to the will, and presumably wrote it, since he was the attorney and counsel for the deceased. And yet that will contained this clause:

"Having advanced to or paid for my son James Fraser large sums of money I purposely and intentionally omit making any devise or bequest to him and do intend and desire that he shall not receive any part or portion of my estate."

This manifestly refers to the $2,225.25 and the $857.86 so paid by the deceased for the benefit of his son James A. *Mr. James Currie* is corroborated in some particulars by other witnesses—especially by James A. Fraser. The transaction took place nearly ten years before the trial. The county court and the circuit court saw and heard all the witnesses, and hence those courts were each in a much better position to judge of the credibility of the witnesses than this court. The claim of Currie Bros. against the estate of the deceased was allowed in both courts. In view of all the circumstances, we cannot say that the findings of the trial court are against the clear preponderance of the evidence. In reach-

ing this conclusion, we have confined ourselves to the competent evidence in the record.

Several errors are assigned for the improper admission of evidence, and for the refusal to strike out testimony. The rule is well established that in a case tried by the court, as here, the improper admission of evidence is not available as error upon appeal. *Wolf v. Theresa Village M. F. Ins. Co.* 115 Wis. 402, 405, 91·N. W. 1014, and cases there cited. If the evidence properly admitted supports the findings, it is sufficient. Id.

Error is assigned because the court permitted *James Currie* to testify to transactions and conversations with the deceased when no one else was present, and for refusing to strike out such testimony. But it appears from the record that the defendant first called and examined him, under sec. 4068, Stats. 1898, as an adverse witness, and on such examination he had testified to the effect that he saw the deceased in regard to the embezzlement a few days prior to August 28, 1893, at his own house, and also at the house of the deceased, when they arranged to meet at Brand's office, and that they met pursuant to that agreement, and that the purpose of the meeting was to adjust this embezzlement matter—to make a settlement which was afterwards made—and he was further asked and answered the question whether he ever promised the deceased that he would not prosecute his son. By such examination the defense opened the door, under sec. 4069, Id., for the admission of the testimony to which objection is now made.

There was no error in excluding the testimony of the defendant's husband, who was offered as a witness generally in the case, and not as the agent of his wife.

The witness Campbell, after testifying at length as to his acquaintance and conversations with the deceased, and as to the trouble of the deceased with Currie Bros., and as to his

disposition, habits, and conduct, stated that on one occasion,. after *Currie* had passed by on the street, the deceased said he did not speak to them at all, and thereupon the witness asked him as to what was the matter. Error is assigned because the court sustained an objection to the question, and refused to strike out such declarations of the deceased. We perceive no reversible error in such rulings. The testimony sought to be stricken out is all before the court, and is without probative .force. The unanswered question called for nothing material to the issues in this case.

*By the Court.*—The judgment of the circuit court is affirmed.