## Bowles, By, etc. v. Rutroff, et al.

(Decided November 16, 1926.)

### Appeal from Pike Circuit Court.

1. Gifts.—Indorsement of bank stock to son never delivered to any one, or transferred on books of bank, but remaining in control and possession of donor, is not effective as gift inter vivos.

2. Executors and Administrators—Widow Failing for 10 Years to Assert Claim to Bank Stock of Husband Against Husband's Administrator or Son, to Whom Stock was Turned Over, is Barred by Limitations from Claiming Interest in Stock.—Widow failing to assert claim to bank stock of husband against his administrator is presumed to have acquiesced in turning over of stock to guardian of son, and, on failure to assert claim against son or guardian for 10 years, is barred by limitations from claiming interest in stock.

3. Descent and Distribution.—Child cannot prevent father from disposing of property as he pleases, but may attack disposition of property after death of father on ground of undue influence, mental incapacity, or fraud.

4. Descent and Distribution—Property Deeded to Mother, Paid for by Son with Money to which Mother was Morally Entitled, Need Not be Accounted for to Grandchild.—Son may pay for property deeded to mother without violating any rights of his child, and when payment is made from proceeds to which mother is morally entitled, there is no basis for requiring mother to restore property or account to grandchild for money so paid.

5. Dower.—Order permitting widows of father and son to receive their proportion of proceeds of sale of realty, instead of allotting dower in other tracts of land not sold, is authorized by Civil Code of Practice, section 495.

6. Dower.—Under Civil Code of Practice, section 495, court may order sale of land free from widow's rights and provide for reasonable compensation to her out of proceeds of sale.

7. Dower—Allowance to Widow in Cash of Proportionate Part of Proceeds of Land and Timber Held Not an Abuse of Discretion, where Assignment of Dower in Other Lands would Have Necessitated Expensive Proceedings (Civil Code of Practice, section 495).—Where assignment of dower to widows would have necessitated proceedings to partition tracts of land not sold, at considerable expense, court did not abuse discretion in allowing widows to receive in cash their proportionate part of proceeds of land and timber thereon which had to be sold, in view of Civil Code of Practice, section 495.

STRATTON & STEPHENSON and O. M. VICARS for appellant,

PICKLESIMER & STEELE for appellee Malinda Bowles Rutroff.

O. A. STUMP for appellee Nola Bowles.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

John C. Bowles died in the year 1910, survived by his widow, now Malinda Bowles Rutroff, and one son, John Bowles, Jr. At the time of his death John C. Bowles owned considerable real estate and several shares of bank stock. John Bowles, Jr., died intestate in the month of August, 1922, survived by his widow, Nola Bowles, and an infant child, Joe Mack Bowles, and Nola Bowles qualified as his administratrix.

This action was brought by Nola Bowles as administratrix of John C. Bowles, Jr., and in her own right, and by Joe Mack Bowles, suing by her as his next friend, against Malinda Bowles Rutroff, the widow of John C. Bowles, Sr., M. G. Bowles, and others, to settle the estate of John Bowles, Jr., to have dower allotted to Nola Bowles and Malinda Bowles Rutroff, to set aside deeds to two tracts of land which John Bowles, Jr., conveyed to his mother, to recover the Fourth street property

which John Bowles, Jr., conveyed to his mother, to cancel the mortgage which John Bowles, Jr., executed to his mother on a Paige automobile, and to cancel deeds made to C. B. Bowles, Mack Bowles and P. W. Day. Certain deeds were set aside, and the propriety of the court's action was never questioned. This left the estate of John Bowles, Jr., the owner of the Division street property and the Cecil Bottom tract, and also the owner of an undivided one-fifth interest in the Bowles homestead, the Flatwood tract and the Cedar farm. The court appointed commissioners to allot dower to Malinda Bowles Rutroff in these tracts, and to Nola Bowles, the wife of John Bowles, Jr., dower in the remainder, and then ordered a sufficiency of the land sold to pay the debts of the estate of John Bowles, Jr. At the same time he denied a recovery of the Fourth street property conveyed to Mrs. Rutroff and sustained the validity of the mortgage which she held on the Paige automobile. He also denied Mrs. Rutroff's claim to the proceeds of certain bank stock which will hereafter be discussed. The judgment first directed a sale of the lands after dower had been allotted. Subsequently, by agreement of the parties, the land was sold free of the dower rights of Mrs. Rutroff and Nola Bowles upon their election to take their portion of the proceeds when collected. Pursuant to the judgment the Division street property was sold for $20,100.00, and the timber on the Cedar farm for $10,000.00, and these sales were confirmed. A sale was then made to Mack Bowles and C. C. Bowles for the one-fifth interest in the Bowles homestead for the price of $7,000.00. The exceptions of the purchasers of the last tract having been overruled and the sale confirmed it was held on appeal that the judgment of sale was void, as the action was not brought against the infant pursuant to Civil Code of Practice, section 428, as amended by laws 1918, c. 155, as required by section 489. On this appeal by Joe Mack Bowles, the infant, and cross-appeal by Malinda Bowles Rutroff, several questions were raised which will be considered in the following order:

(1) John C. Bowles, Sr., owned 40 shares of stock of the First National Bank of Pikeville. Several years prior to his death he made and signed the following indorsement on each of the certificates:

"For value received, I hereby sell, assign and transfer to John Bowles, Jr., — shares of the capital

stock represented by the within certificate and do hereby irrevocably constitute and appoint Tom Williamson and W. W. Gray to transfer the said stock on the books of the within named corporation, with full power of substitution in the premises.''

John C. Bowles, Sr., never delivered the stock to the infant or to anyone for him, and the stock was never transferred on the books of the company. On the contrary, he drew the dividends up to the time of his death, and had the stock in his possession when he died. Shortly after the death of John C. Bowles, Mack Bowles was appointed guardian for John Bowles, Jr., and took possession of the bank stock. Thereafter, the bank declared a stock dividend, and issued to Mack Bowles, guardian, 40 additional shares. When John Bowles, Jr., arrived at age his guardian, Mack Bowles, accounted for 80 shares of bank stock, which then had a market value of about $20,000.00. On reaching his majority John Bowles, Jr., sold to Kentucky Power a portion of the bank stock. That company had sold to Malinda Bowles (now Malinda Bowles Rutroff), in the year 1918, a lot on Fourth street for a consideration of $4,000.00, and executed a conveyance to her for the property, retaining a lien for the entire purchase price. The purchase price was evidenced by notes executed to Kentucky Power by Malinda Bowles. Mack Bowles, who was both administrator of John C. Bowles, Sr., and guardian for John Bowles, Jr., indorsed the notes and took part in the transaction in order to procure a home for Malinda Bowles and John Bowles, Jr., with the understanding that the property would be paid for out of the estate of John C. Bowles, Sr. When John Bowles, Jr., became twenty-one he sold the bank stock to Kentucky Power and permitted his mother to deduct from the price thereof the sum of $4,800.00, which was the purchase price with accrued interest of the house and lot on Fourth street. On her cross-appeal Mrs. Rutroff insists that the gift of the stock by her husband, John C. Bowles, Sr., to John Bowles, Jr., was not valid as a gift *inter vivos*, and that she on the death of her husband was entitled under the statute to one-half of the bank stock. Not only is this contention resisted, but it is insisted on behalf of the infant appellant that she and the mother had such an interest in the father's estate as to preclude him from giving to his mother the Fourth street property purchased with the proceeds of the bank stock.

As the bank stock was never delivered either to the infant or to anyone for him, or transferred on the books of the bank, but the control and possession thereof remained in the donor, there is no escape from the conclusion that the transfer was not effective as a gift *inter vivos*. Foxworthy v. Adams, 136 Ky. 403, 124 S. W. 38, 27 L. R. A. (N. S.) 308. This being true, Mrs. Rutroff as the widow of John C. Bowles, Sr., was entitled under the statute to one-half of the stock upon the assertion of her claim within the proper time. However, she seems to have asserted no claim therefor against her husband's administrator, and there being no evidence to the contrary, it must be presumed that the stock was turned over to the guardian of her son, John Bowles, Jr., with her acquiescence and consent. Not only so, but after that time more than ten years elapsed before she, by action, asserted any claim either against her son, his guardian, or her son's estate, and there can be no doubt that her claim is barred by limitation. That being true, the chancellor did not err in dismissing the claim.

2. It remains to determine whether the infant appellant is entitled to restoration of the Fourth street property, or to have Mrs. Rutroff account for the money invested therein. Whether Nola Bowles, the widow of John C. Bowles, could complain, we are not called upon to decide, as she is not a party appellant in her own right. Upon the death of his father a child may attack his gifts, transfers and conveyances on the ground of undue influence, mental incapacity or fraud, but a child, as a child, has no such rights in his father's property as will prevent the father from disposing of it as he pleases. There is no showing of undue influence, mental incapacity or fraud. On the contrary, the whole transaction seems to have been carried out with the approval of the guardian of John C. Bowles, Jr. In the circumstances, John C. Bowles, Jr., had the right if he so desired to pay for the property that had been deeded to his mother without violating any rights of the infant appellant, and when it is remembered that the payment was made out of the proceeds of property to which his mother was morally entitled, there is no basis whatever for the claim that his mother should restore the property or account to his child for the money so paid. It follows that the chancellor's decision on this question was correct.

3.    The purchasers of the different tracts have not
been made parties appellee, and the infant does not seek
to have the sales declared void.   On the contrary, it is
conceded on his behalf that the tracts sold brought more
money than if a resale were ordered.   The only question
he raises is the propriety of the court's action in permit-
ting the widows to receive their proportion of the pro-
ceeds of the sale instead of allotting them dower in the
other tracts that were not sold.   The argument is that
the land sold brought about enough to pay the debts of
John Bowles, Jr., and that if the widows receive any part
of the proceeds of the sale this will necessitate the sale
of other lands out of which dower could have been al-
lotted.   There is the further insistence that the consent
order by which the land was sold free of the dower rights
of the widows upon their election to take cash out of the
proceeds of the sale was void because the infant could
not consent and no one could consent for him.   Though
the order purports to have been made by consent, as we
view the question the consent of the infant was not neces-
sary.   The action of the court was authorized by section
495, Civil Code.   Under that section the court may order
a sale of the land free from the widow's right, and shall
provide for reasonable compensation to her out of the
proceeds of the sale.   As said in McClain v. McClain,
152 Ky. 206, 153 S. W. 234, "The meaning of the statute
is to vest a sound discretion in the chancellor, and to
authorize him to adjudge her compensation for her
dower, instead of allotting to her dower.   The discretion
of the chancellor is to be exercised in view of all the facts
of the case so as to best protect the interest of all the
parties.   The widow may not demand a sale of the prop-
erty so that she may obtain a certain sum absolutely in
lieu of dower, but where for other reasons the property
is sold, and she prefers to take a lump sum absolutely;
the chancellor in his discretion may so adjudge."   At the
time of his death John Bowles, Jr., owned the Cecil Bot-
tom tract, the Division street property, and an undivided
one-fifth interest in the Bowles homestead, the Flatwood
tract and the Cedar land, out of which his mother, as his
father's widow, and his own widow were entitled to
dower.   The Division street property, and his interest in
the Bowles homestead and the timber on the Cedar land
were sold.   This left the Flatwood tract, the Cedar land
and the Cecil Bottom tract.   It would have been impossi-

ble to assign two dowers out of the tracts in which he owned an undivided one-fifth interest without first taking proceedings to have the tracts partitioned, which would necessarily entail considerable expense, and there is no showing in the record that the Cecil Bottom tract was of sufficient extent and value to permit the two dowers to be assigned out of that tract. The tracts actually sold had to be sold for the purpose of paying the debts of John Bowles, Jr. In the circumstances we can not say that the court abused a sound discretion in permitting the widows to receive in cash their proportionate part of the proceeds of the land sold. Nor is there any merit in the contention that the timber on the Cedar farm occupies a different position. The timber was a part of the real estate, and the widows had as much right to the proceeds of the timber as they had to the proceeds of the other real estate sold.

Wherefore, the judgment is affirmed both on the original and cross appeal.