## Bell's Ex'r et al. v. Lawrence et al.

(Decided March 4, 1938.)

440

GILBERT & DAVIS for appellants.

GEORGE L. WILLIS, JR., and TODD & BEARD for appellees.

OPINION OF THE COURT BY JUDGE RATLIFF—Affirming in part and reversing in part.

Laura Bell died a resident of Shelby county, Ky., and W. H. Bell and his son, Joe B. Bell, the latter being the appellant in this appeal, were appointed administrators of her estate. After partly settling the estate, but before final settlement, W. H. Bell died testate, naming appellant executor of his will, and appellant then became the representative of both estates.

It appears that appellant was not making satisfactory progress in the settlement of the estates, and appellees, who are heirs at law and also distributees under the wills of the two decedents, Laura Bell and W. H. Bell, brought separate suits in the Shelby circuit court against appellant as representative of the respective estates to require him to make a final settlement of his accounts.

The suits were consolidated and a rule issued against appellant requiring him to file a settlement of his accounts, which he did, and appellees filed exceptions to both settlements. A special commissioner was appointed to hear proof on the exceptions and make settle-

ment with appellant and, after a voluminous amount of evidence was taken, the commissioner made his report and the court entered judgment thereon.

One item of the exceptions filed to the appellant's settlement of the estate of W. H. Bell reads:

"Executor has failed to charge himself with a mortgage indebtedness of $4,000.00, which he owes the estates of W. H. Bell. * * *"

The commissioner allowed this exception and the court sustained it and rendered judgment thereon against appellant, and from the judgment on that item only appellant has brought this appeal, insisting for a reversal of the judgment on the ground that the evidence fully sustains appellant's contention that he does not owe this item, or otherwise indebted to the estate of W. H. Bell, in any sum or amount. Since no other item is involved in this appeal, we will confine our review of the evidence to that item only.

Appellees, who were the exceptors below, took the depositions of appellant as if on cross-examination as provided in section 606, subsection 8, of the Civil Code of Practice, and relied upon his evidence alone to sustain their exceptions.

The principal questions in controversy are the competency of appellant's evidence and the weight and credit to be given to such part of his evidence as may be competent.

After examining appellant concerning various items of his settlement of each of the estates, appellees' counsel then proceeded to examine him in reference to the $4,000 item here involved, which was secured by mortgage. To be specific and accurate we here note the following questions and answers thereto:

"Q. I will take up item 16; In mortgage book 55, page 449, there is in the County Clerk's office a mortgage executed by you and your wife to your father for $7,800.00, $3,800.00 of this is represented by a note that was transferred to the Shelby County Trust and Banking Company, is that true? .A. That is correct.

"Q. Four Thousand Dollars of that is to secure W. H. Bell from any loss he might sustain by rea-

son of being surety on two notes for you? A. That is right.

"Q. One of these notes for $3,000.00 was held by the Deposit Bank? A. That is right.

"Q. The other note for $1,000.00 was held by the Bank of Shelbyville? A. That is right.

"Q. Who paid those notes? A. I paid part of them.

"Q. Who paid the rest of them? A. He did.

"Q. With what money? A. Money he had.

"Q. Wasn't it paid by money he borrowed from the Federal Land Bank? A. Absolutely, I guess so.

"Q. The note at the Bank of Shelbyville was paid by check of W. H. Bell, was it not? A. It was.

"Q. The note at the Deposit Bank was paid by check of W. H. Bell? A. It was.

"Q. Have you paid him back? A. Well, I advanced him money, gave him my check, my inheritance part I got from Laura Bell.

"Q. How much was that, Mr. Bell? A. My inheritance check was $500.00.

"Q. You turned that over to him? A. Yes, shows his signature on the back of it.

"Q. How else did you pay him this $3,500.00? A. Paid him two more checks, six hundred and some odd dollars a piece.

"Q. That was $1,200.00 you gave him checks for $600.00; that is $2,100.00 more. A. Advanced him the money when he bought this apartment house down here.

"Q. Have you got those checks? A. Yes sir.

"Q. Will you file them with your deposition? A. I am afraid they will get lost. I will let you see two and the record of the other one, you can go to the Deposit Bank and get the date, my inheritance check was $535.00, signed by him and here is one signed by him, I lost this check, there is the date and the amount.

"Q. That is all you have paid on that indebtedness. A. That is all I have paid.

"Q. You owe the balance? A. I don't think so. (Said checks above referred to are as follows: A check dated February 13, 1930, for the sum of $535.11, signed Joe B. Bell, made to W. H. Bell, a check to Joe B. Bell, dated April 17, 1931, $500.00, endorsed by W. H. Bell, and another check dated June 22, 1931, for $680.18, payable to W. H. Bell.)

"Q. That is all you have paid your father on this Four Thousand Dollar indebtedness, the three checks you have described? A. That is four. I paid the first $500.00 on the Bank of Shelbyville, and $500.00 on the house.

"Q. On the $3,500.00 debt you have paid $1,000.00 more than those checks? A. A Thousand Dollars more than these three checks and the banks five hundred dollars apiece.

"Q. How did you pay that, Mr. Bell? A. By check.

"Q. Have you got those checks? A. No, I paid them.

"Q. You paid each one of those Five Hundred Dollar payments by check? A. Yes sir.

"Q. And you haven't got those checks? A. No, because you see it was paid at the bank.

"Q. When did you pay them? A. I imagine about '32.

"Q. And you have paid the total of those checks and $1,000.00 on the $4,000.00 debt that your father had to pay off, is that right? A. That is right.

"Q. And you have never paid him any of the balance? A. No.

"Q. But you have while owing the estate that you have deducted in your settlement commissions and your distributable share? A. I don't owe the estate anything at all.

"Q. How much do those three checks total? A. Close to $1,800.00.

"Q. And you paid $1,000.00; what about the $1,200.00? A. He gave it to me.

"Q. He took a mortgage to secure it though,

didn't he? A. Yes, I made him take the mortgage, I wanted him secured.

"Q. That mortgage was not released at the time of his death? A. No sir."

The direct examination of the witness was continued relating to certain other items, but the foregoing is the gist of the evidence brought out on direct examination (as though on cross-examination) by counsel for appellees, relating to the $4,000 debt.

Appellant's counsel cross-examined him on all phases of the settlement of the estate, and in reference to the $4,000 item in controversy appellant explained the payments and credits he had made on that item in substance as indicated in his direct examination, and further stated that on December 9, 1931, he and the decedent, his father, went to the bank in Shelbyville, and his father paid off the balance of the $4,000 debt with money he had borrowed from the Federal Land Bank, and that he and his father then made a settlement covering all their business transactions and he was still indebted to his father in the sum of $2,712.58, and Burnett Wallace, now deceased, was present and prepared a note for him to his father in the above sum and he signed it and gave it to his father and his father said to him, " 'Let's go see Matthew Hall and pay him off' (meaning the other bank) I said do what you want to do with it," He further said that while going across the street his father gave him the note, saying to him, "I owe you money, here is the note." He said he kept the note in his possession and it never was placed with his father's other papers in the bank.

It is insisted for appellant that, appellees having examined appellant concerning the payment of the $4,000 item, including transactions with his deceased father, his incompetency as a witness to testify to such matters was then removed and he became a competent witness, and all his evidence on direct examination (as if on cross examination) and on cross-examination by his counsel was competent; and that, appellant's evidence being uncontradicted, it is conclusively shown that appellant does not owe his father's estate the $4,000 item or any part of it.

But it is insisted for appellees that appellant's evidence concerning the gift of $1,200 representing the

alleged balance on the $4,000 item after deducting other payments he claims he made totaling approximately $2,800 and also the alleged gift of the note of December 9, 1931, for the sum of $2,712.58, was brought out on cross-examination by appellant's counsel and therefore incompetent.

We cannot accept the argument that any part of appellant's evidence was incompetent, or that the question of gift was not opened up on his direct examination by appellees' counsel. It is to be noticed that near the close of the questions and answers we have quoted above appellant summarized the payments he had made to his father on the $4,000 item, totaling approximately $2,800, and counsel asked him, "And you have never paid him any of the balance?" to which appellant answered, "No." It is to be observed that the witness' answer was in response to the question whether he had *paid* any of the balance, as distinguished from *gift* of the balance. Then in response to the next question the witness answered, "I don't owe the estate anything at all," apparently still attempting to avoid the question of gift. By the next question counsel again summarized the payments indicating a total of about $2,800, and further pressed the witness to explain the balance of $1,200 by asking him, "What about the $1,200?" to which the witness answered, "He gave it to me." It appears that the answer was elicited from the witness under pressure after he had said he had not *paid* the balance and had also given the evasive answer, that he did not owe the estate anything at all. It is disclosed by appellant's evidence that he had made payments on the note totaling about $2,800 and was denying that he owed the estate anything and, after being repeatedly questioned and pressed for an explanation as to what became of the $1,200 balance, he was forced to answer that his father gave it to him, or confess judgment in that sum. But, aside from the insistence of counsel that the witness explain the balance of $1,200 or whether counsel intentionally injected the question of gift, appellees having examined appellant in reference to the payments he made on the $4,000 item, and whether or not he owed the estate that item or any part of it, appellant's counsel had the right to cross-examine him concerning all matters on which he was interrogated by appellees' counsel, including the alleged gift. It is our

view that appellant's evidence on cross-examination by his counsel concerning the settlement or payment of the $4,000 including the transactions with his deceased father relating to credits made by payment and the gift of the note for $2,712.58 is competent.

In Arnold v. Cocanaugher, 170 Ky. 712, 186 S. W. 488, 489, the administrator of an estate was called as a witness by the opposing parties and examined in reference to his settlement of the estate, including transactions with his deceased mother. On appeal to this court the competency of the administrator's evidence was involved, and in holding his evidence competent we said:

"Appellants are not in a position to complain that appellee was not competent to testify concerning transactions which he had with his mother, who was dead when the testimony was given. It appears that he was called as a witness by appellants and his deposition taken in their behalf. Having examined him in reference to numerous transactions with his mother, his disqualification as a witness was removed, and he became competent to testify in his own behalf as to matters concerning which he had been so interrogated. 40 Cyc. 2344; German v. Brown & Leeper et al. 145 Ala. 364, 39 So. 742; Currie et al. v. Michie, 123 Wis. 120, 101 N. W. 370; Weil & Bro. v. Silverstone, 6 Bush 698."

But the evidence being competent does not mean that it is conclusive. The court had the right to take into consideration all the facts and surrounding circumstances in weighing and adjudging the evidence.

In the obscure condition of the evidence we are unable to determine whether or not the $1,200 balance was included in the note of December 9, 1931, for $2,712.58, which appellant says his father gave to him. Appellant was asked when he made certain payments on the note which he claimed were made by check, and he answered, "I imagine some time in '32," indicating that he had made payments to his father after the execution of the note for $2,712.58, dated December 9, 1931. But in any event the preponderance of the evidence tends to show that appellant paid approximately $2,800 on the $4,000 mortgage debt. It cannot be said that appellant's evidence relating to the payments he detailed is unreasonable or improbable, and, the evidence being competent and uncontradicted by any direct testimony and

but slightly, if at all, contradicted by the circumstances, it is our view that the preponderance of the evidence is to the effect that appellant had paid the approximate sum of $2,800 on the debt in question, and the court erred in failing to credit the debt with that sum.

But the alleged gift of the note of $2,712.58 presents a more doubtful question. While the evidence of appellant pertaining to this alleged gift is not contradicted by the direct testimony of any witness, yet it appears to be inconsistent with reason and it may be said that it is contradicted by the circumstances. Appellant admits that the $4,000 debt was secured by mortgage and insists that his father gave him the note of $2,712.58 on December 9, 1931, and that that sum was a full settlement of all his indebtedness to his father, but the mortgage was not released of record at the time of his father's death in June, 1935. It is argued for appellant that his possession of the note is a strong circumstance in his favor; but it must not be forgotten that the mortgage remaining in force or not being released of record during the many years his father lived after the alleged gift is a strong circumstance tending to show that the debt represented by the mortgage had not been satisfied. And, furthermore, the circumstances under which the note was executed and the alleged immediate gift of it are inconsistent. According to appellant's evidence, when he and his father made the settlement he was still indebted to his father in the sum of the note in question and that Burnett Wallace, now deceased, prepared the note and he, appellant, signed it, and then immediately started across the street to settle with another bank and before they reached the bank his father gave him the note, saying to him, "I owe you money, here is the note." If appellant owed the decedent the amount of the note, decedent knew that fact before the note was prepared and signed. It is difficult to understand why they would have gone through the formality of executing and signing a note for appellant's indebtedness to decedent if decedent did not consider appellant indebted to him or that decedent's indebtedness to appellant was equal to that sum, and then within ten minutes or less time give the note back to appellant, for the alleged reason that decedent owed appellant the amount of the note instead of appellant being indebted to decedent.

The alleged gift must be determined by the law of gifts inter vivos and, in light of the facts and circumstances, it is doubtful that the evidence is sufficiently clear and convincing so as to sustain an inter vivos gift.

In Combs v. Roark's Adm'r, 221 Ky. 679, 299 S. W. 576, 578, it is said:

"As a gift is a parting by the owner with his property without pecuniary consideration, the law scrutinizes such transactions very closely, and to establish such a gift there must be a donor competent to make it, and an intention on his part to make it; a donee capable of taking a gift; the gift must be complete with nothing left undone; the property must be delivered by the donor, must be accepted by the donee, must go into immediate and absolute effect, must be gratuitous, and, in the case of gifts inter vivos, must be irrevocable."

If it be conceded that the decedent delivered to appellant and left in his possession the note in question, that would not be conclusive of an absolute and irrevocable gift of the note with the intention of parting with title thereto, but a mere circumstance only, tending to show that it might have been so intended. In Hays' Adm'rs v. Patrick, 266 Ky. 713, 99 S. W. (2d) 805, 809, we said:

"The mere possession of the property by the donee is not sufficient evidence of a gift, for this may be consistent with a mere custody or agency."

Decedent and appellant were father and son and had numerous business transactions with each other, and at the time of the execution and alleged gift of the note decedent's estate was in an unsettled and complicated condition. It appears that decedent had issued numerous checks to his other children, most of which were business transactions, but perhaps some of them gifts. But those representing gifts, if they were so intended, were comparatively small sums in contrast to the amount of the note which appellant claims decedent gave to him. The fact that decedent named appellant executor of his will and entrusted to him the handling and settling of his estate is evidence that decedent reposed in appellant much confidence, and, there being a personal confidential relation between the parties as well as appellant being the representative of the estate

of decedent, is a further reason why the evidence of the alleged gift should be clear and convincing and free from reasonable doubt.

In Hays' Adm'rs v. Patrick, supra, it is said:

" 'The evidence must be so cogent * * * as to leave no reasonable doubt in the mind of an unbiased person that the demand is a proper one.' Such undeviating requirements are doubly true where the gift is first asserted after the death of the donor, and likewise more emphatically true where there exists confidential relations between the donor and the donee.''

Under the authorities herein cited it is seen that the evidence relied on to establish the alleged gift of the note is indeed doubtful. It is the established rule of this court that, where the evidence is such that it cannot be plausibly said that the preponderance of it is on either side and the truth of it left in doubt, the finding of fact by the chancellor will not be disturbed by this court.

The chancellor found that the evidence was insufficient to establish the alleged gift of the note under the rules of inter vivos gifts, and, upon review of the evidence for ourselves we are unable to say that the finding of the chancellor was contrary to the preponderance of the evidence, hence we are without authority to disturb the finding of the chancellor.

Wherefore, the judgment is affirmed to the extent of the note of $2,712.58, but reversed as to the amount over and above that sum.

Whole court sitting.