## Nolty v. Fultz.

Dec. 6, 1938.

G. W. E. WOLFFORD, Judge.

**50**

JESSE K. LEWIS and W. J. FIELDS for appellant.

R. C. LITTLETON and A. C. JARVIS for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

This is the second appeal of this case, prosecuted from a judgment of the Carter circuit court rendered against the administrator of Wm. Nolty, Sr., upon a retrial of an action brought by him against the appellee to recover property alleged belonging to the intestate's estate and in which it was further alleged that the appellee had fraudulently converted and was wrongfully using and withholding its possession from the administrator.

The factual situation, pleadings and issues based thereon, which are in the main the same as here, will be found clearly stated in the opinion delivered upon the first appeal, reported in 261 Ky. 516, 88 S. W. (2d) 35, and need not here be reiterated further than to observe, by way of presenting briefly the factual situation out of which the action arose, that it is therein stated that

Wm. Nolty died on January 31, 1933, in his seventy-ninth year, unmarried, intestate and without issue, when his estate, under the statute of descent, passed to his three sisters surviving him and to the children (among whom was the appellant), per stirpes, of his deceased brother, Henry Nolty.

It appears that on January 1, 1933, one of the deceased's neighbors found the aged Wm. Nolty in his cabin seriously ill and at his request took him to the home of his niece, the appellee, in Carter county, where he remained under her care and nursing until his death.

The relatives of deceased believed him to be very wealthy and frequently inquired of appellee, who took posssssion of and claimed everything her deceased old uncle had, as to what estate he had left them, to which she answered that he did not "leave," or leave them, anything.

In the belief that the inheritance rights of the other heirs were being wrongfully ignored, on September 25, 1933, Wm. Nolty, Jr., was appointed and qualified as administrator of the deceased Wm. Nolty's estate, and on October 2 following filed suit in equity against Virginia Fultz, charging her with "having concealed and embezzled the old man's money."

This suit was in the nature of a bill of discovery, to which the administrator attached interrogatories addressed to appellee and her co-defendant, the First National Bank of Grayson, Ky., in which it appears she had deposited the larger part of the old man's money which had come into her possession and been retained by her as donee.

The appellee, in answer to the interrogatories propounded to her, asserted that, on the day he came to her home, the old man gave her $4,050, which she has since had, and in her answers to said interrogatories, she did not confine herself to simply responding to the questions propounded, but went far afield and gave answers and detailed happenings, conversations, and occurrences had with the deceased, William Nolty, concerning which she was not ordinarily a competent witness.

The case was heard by the jury, which returned a verdict for the defendant.

Upon appeal therefrom, we reversed the judgment and granted a new trial, saying:

"Since she [appellee] had admitted in her answer the receipt of this money from the old man, the burden was on Mrs. Fultz to account for the retention of it; * * *. She did not offer to take the stand herself, but offered, and over the objection and exceptions of the plaintiff, was allowed by the court to read to the jury the interrogatories that had been propounded to her and her answers to them. The administrator had on that day filed a written motion to strike, from the answers made by Mrs. Fultz to the interrogatories, those parts which he contended were not responsive to them because they violated section 606 (2) of the Civil Code of Practice, as she was testifying for herself concerning a transaction and conversation with the plaintiff's intestate. The court overruled this motion, and the administrator excepted. * * *

"For Mrs. Fultz it is contended that, by virtue of the provisions of sections 140 and 141 of the Civil Code of Practice, she was not required to confine her answers to merely responding to the interrogatories, but that she had the right to state any fact she saw fit, and that she had a right to read these as a deposition." 88 S. W. (2d) 36.

In disposing of this contention, it is observed in the opinion that:

"This action was originally brought in equity, but on March 3, 1934, it was by agreement transferred to the ordinary docket, and it was on the ordinary docket at the time of the trial, hence the answers could only be read under those same circumstances that a deposition of Mrs. Fultz could be read. Those circumstances are set out in sections 554 and 608 of the Civil Code of Practice which have been interpreted to mean that a deposition of a witness who is present at the trial of a common-law action cannot be read as substantive evidence."

Further it was therein held that this cause having been transferred by agreement to the ordinary docket and tried as a common-law action, when Mrs. Fultz was present and in the courtroom, the court erred in permitting her to read in her own behalf her answers made to the interrogatories, as her deposition; further that "when plaintiff propounded the questions he did to Mrs. Fultz, he thereby waived her incompetency as a

witness and made her competent to testify about any matters concerning which he had interrogated her, but no further;" that "other fields not opened by the plaintiff remain closed as before, but as to any field of inquiry which plaintiff opened by his interrogation to her, she is a competent witness as to anything in that field, but not as to anything outside that field;" and further held that while Mrs. Fultz might testify, she had to do so in person and could not read her answers as given to these interrogatories. It was then adjudged that because of Mrs. Fultz having been erroneously permitted by the trial court to read her answers made to the interrogatories, instead of taking the stand herself, the judgment should be reversed and a new trial awarded.

Upon the second trial of the case, the appellee, Mrs. Fultz, consistently with the instructions given upon the first appeal, was called to the stand and permitted to testify as a competent witness concerning the matters about which the appellant had by his interrogatories questioned her.

By the fifth of these interrogatories, the appellee was asked:

"Did he (Wm. Nolty, Sr.) bring any money and/or other property with him when he came to your home? If he did, please state what became of said property, if you know."

We are of the opinion that when plaintiff propounded this broad question to Mrs. Fultz, he thereby, as held on the former appeal, waived her incompetency (Section 141, Civil Code of Practice) as a witness and made her competent to testify about the matter interrogated, even though in answering the interrogation she was testifying for herself concerning a transaction and conversation had with her intestate kinsman and alleged donor.

The scope of the question asked the appellee, as to whether the intestate had brought money or other property with him when he came to her home, and if he did, to state what had become of said property, was in its nature so general an inquiry as to what the deceased had done with the money which he brought to her home as authorized and permitted her to answer it with the statement that he had at such time handed over and given to her his pocket book containing the money, si-

multaneously telling her that he gave it to her to be her own and advised her to bury it.

Such answer given by appellee we are of the opinion was responsive to the question asked her as to whether intestate had brought money to her home and, if so, what had become of it. Being such, it must be treated as coming within "the field of inquiry which plaintiff opened by his interrogation of her," and made her a competent witness as to anything in that field, as being licensed in an ordinary action under Section 146, Civil Code of Practice, to the effect that the provisions of Section 141, Civil Code of Practice, shall apply to answers and interrogatories in ordinary actions.

Also, in the late case of Bell's Ex'r et al. v. Lawrence et al., 272 Ky. 439, 444, 114 S. W. (2d) 517, we likewise decided, in proceedings on exceptions to settlement of executor's accounts, wherein counsel for excepting parties called executor for direct examination concerning personal debt alleged due from executor to deceased and elicited testimony that executor had paid part of the debt and that deceased had given executor the balance, that executor's testimony given on cross-examination by his counsel, concerning details of the transaction, was competent. In so holding, the case of Arnold v. Cocanaugher, 170 Ky. 712, 186 S. W. 488, 489, is cited in the opinion with approval, wherein an administrator of an estate was called as a witness by the opposing parties and examined in reference to his settlement of the estate, including transactions with his deceased mother. On appeal the competency of the administrator's testimony was involved and as to which we said:

> "Appellants are not in a position to complain that appellee was not competent to testify concerning transactions which he had with his mother, who was dead when the testimony was given. It appears that he was called as a witness by appellants and his deposition taken in their behalf. Having examined him in reference to numerous transactions with his mother, his disqualification as a witness was removed, and he became competent to testify in his own behalf as to matters concerning which he had been so interrogated. 40 Cyc. 2344; German v. Brown & Leeper et al., 145 Ala. 364, 39 So. 742; Currie et al. v. Michie, 123 Wis. 120, 101

N. W. 370; Weil & Bro. v. Silverstone, 6 Bush 698.''
114 S. W. (2d) 521.

However, as is there stated, in holding the evidence competent, it does not mean that it conclusively shows that an irrevocable gift was made, but that it is only evidence as to asserted circumstances which tended to show it was the intention of deceased to make her an inter vivos gift of his property.

As said in Hays' Adm'rs v. Patrick, 266 Ky. 713, 99 S. W. (2d) 805, 809: ''The mere possession of the property by donee is not sufficient evidence of a gift, for this may be consistent with a mere custody or agency.''

However, the appellee's testimony as to her uncle's gift to her was not the only evidence tending to support his alleged intention to give his property or money to her, as several witnesses, who it is shown were among the deceased's oldest and closest friends and confidants, testified that shortly before the intestate's death, he had told them that he had intended for appellee to have his entire estate because of his special fondness of her and in appreciation of her good character and qualities, as evidenced by the fact that she was the only one of his kin who had taken care of and looked after the needs of her father, the intestate's brother, during the long period of his last illness. It was also shown by the testimony of these close friends of intestate that appellee had been cordial and kind in her relationship with her old uncle and had been kindly attentive to him during the years of his age and failing health.

It may be conceded, as urged by appellant, that where a confidential relationship exists and an alleged gift is not asserted until after the death of the donor, such circumstances are to be considered as earmarks of fraud, for the removal of which clear and convincing evidence is required. However, we are of the opinion, regardless of the misgivings we may have harbored as to the correctness of the jury's finding on this point, that the competent evidence before us was sufficient to support its verdict finding that a binding gift inter vivos was made and intended to be made by the donor of the money in question to appellee.

Our view in this is strengthened by reason of the fact that it appears the intestate was an old and eccentric man, who did not believe in displaying his savings or in banks as safe or desirable depositories for his

money, with which views it appears the appellee was familiar and perhaps shared and that therefore she followed his advice when told to bury the money he gave her.

This she testifies she did and did not bring it out of hiding or put it in the bank until something like a year thereafter, when the President demanded that all money and gold be brought out of hiding and deposited in banks.

Her conduct in burying the money and concealing the fact of her having it from her coheirs in the estate would clearly cast suspicion upon the truth of her claims made as donee of the property, but for these special circumstances surrounding the alleged gift, tending to make same less extraordinary and as having been pursued for a wrongful and selfserving purpose.

As to the further contentions here presented by the appellee's motion to dismiss the appellant's appeal and also to strike his bill of exceptions, as having been granted in violation of the provisions of Section 334, Civil Code of Practice, it is sufficient to say that it is unnecessary to here extend the opinion by a discussion of these points, in that the appellee is in no wise prejudiced thereby, in view of our having affirmed the judgment in her favor appealed from, as well as for the further reason that we do not regard either of these contentions, under the facts and circumstances shown here existing, as meritorious, in that the first motion was expressly otherwise decided in the case of Hill's Adm'r v. Penn. Mut. Life Ins. Co., 120 Ky. 190, 85 S. W. 759, 27 Ky. Law Rep. 567, while the second, that is the motion to dismiss the appeal, is based upon the untenable ground that no notice was given appellee, a non-resident, of the filing of the appellant's schedule with the clerk, calling for only a partial record, in violation of the requirements of the code provisions in such case applicable, in that we do not find that the schedule only called for a partial record as the notice stated that the record heard upon the first appeal was to be made a part of it and further for the reason that it appears the appellee herself thereafter entered her appearance upon the appeal.

Therefore, for the reasons above indicated, we are of the opinion that the lower court's judgment should be and it is affirmed.