## Gernert et al. v. Liberty Nat. Bank & Trust Co. of Louisville et al.

Nov. 29, 1940.

Churchill Humphrey, Judge.

Huggins & Hogan for appellants.

Edw. Bloomfield and Wm. S. Heidenberg for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 26, 1938, Louise Gernert, a maiden lady advanced in years, died intestate, a resident of the city of Louisville, Kentucky. Following her death appellee, and a defendant below, Liberty National Bank and Trust Company of Louisville, was appointed administrator of her estate, which position it accepted, and after qualification took charge of her personal property which the law vested in it as such representative for the pur-

pose of distribution as the law directs. The intestate owned a considerable amount of both real estate and personal property, the latter amounting to between fourteen and fifteen thousand dollars, the inventory of the appraisers showing the amount and items thereof. There were no debts owed by the intestate except, perhaps, a remnant of physicians' bills and her funeral expenses. The personal property consisted of cash on deposit in bank, bank stock, bonds and other securities about which no question existed as to solvency. The nearest relatives and heirs of the intestate who survived her were and are Minnie Krankel, and Amelia Rehkopf, two married sisters, and eleven nephews and nieces, children of deceased brothers and sisters.

On March 21, 1939, two of the nephews and one niece jointly filed this equity action in the Jefferson circuit court against the administrator—and all of the other heirs of the intestate—and in their petition they averred that the inventory made of the personal assets of the estate was incorrect in that it did not include certain pieces of jewelry belonging to the estate, nor did it include some notes which plaintiffs averred were executed by some of the heirs (who were named) to the intestate, and which had not been paid, the aggregate amount of which (as averred) was $2,500, but the exact amount of which was unknown to plaintiffs. However, they alleged that by reason thereof there was due to be paid the estate from the sister, Amelia Rehkopf, $1,500; by Phil Rehkopf, her son, $1,000, and by Phil Gernert, another nephew, the sum of $48. There was no value put upon the jewelry by plaintiffs in their petition, but they prayed that the claimed omitted property be recovered as a part of the assets of the estate and for its settlement after such augmentation.

Defensive pleadings were filed putting in issue the material averments of the petition and affirmatively alleging that the notes mentioned in the petition had been reduced by payments made thereon to nominal amounts, and that the intestate before her death released and relinquished to the payers of the notes all balances due thereon and delivered the notes to the parties who executed them, as gifts. It was furthermore affirmatively alleged in the defensive pleading that the limited amount of jewelry was distributed by decedent before her death as gifts to some of her preferred heirs, including her

two sisters, and that all of such property was then and there delivered to the donees, except two of the gifts were made to a couple of nieces who were absent at the time, but their donations were delivered to another heir in trust for them, with instructions from the deceased that the articles be delivered to the respective donees by the trustee, which was later done, but, perhaps, in some instances after intestate's death.

A reply controverted the affirmative averments and the cause was referred to the court's commissioner to take proof and report upon the issues of fact thus made. That task was valiantly and ably performed by the commissioner who, after taking the proof offered by either side, determined and held that the aggregate value of all the property sought to be recovered for the benefit of the estate, by plaintiffs in their petition was only about $700, and that it had been disposed of by inter vivos gifts, as averred in the affirmative paragraph of defendants' answers. Accompanying that report was the testimony taken, heard and considered by the commissioner, who in his report also overruled and dismissed a motion for the allowance of an attorneys' fee to plaintiffs' counsel in prosecuting the action, amounting (as they claimed was reasonable) to the sum of $1,250. Plaintiffs filed exceptions to that report, in which they raised the issues as to the validity of the gifts which the commissioner had upheld, and the exceptions also disputed the correctness of the commissioner's ruling in disallowing an attorneys' fee to be taxed as costs and to be paid out of the estate. The court overruled all plaintiffs' exceptions to the report and confirmed it. From that judgment plaintiffs and their attorneys, (Huggins and Hogan) prosecute this appeal.

In attacking the validity of the gifts, upheld and sustained by the commissioner, and by the court in its judgment, counsel for appellants make two arguments—(1), that the testimony of the two surviving sisters of the decedent—whose testimony plaintiffs took as if on cross-examination, showed that the intestate was, as counsel argue, incompetent to make the gifts at the time they were alleged to have been made, and (2) that each of them in which the donated property was not personally delivered to the donee at the time was invalid, since, as insisted, it is necessary for the completion of a valid inter vivos gift that the property be delivered to the

donee in person and not to a trustee or agent for him. Attention will now be given to those two arguments.

1. Argument (1) is wholly unsupported by the testimony, and in fact it is not seriously urged on this appeal. While the testimony established the fact that at the time of the gifts the deceased donor was not in robust health, yet there is not the slightest intimation by anyone that she was mentally incompetent to comprehend her estate, the property which she was donating to her relatives, the purpose inducing her to take that action with reference to each of them, and to transact any and all business matters relating to her property as she had always done. Impaired health alone is not enough to prove mental incompetency, unless the impairment is to such an extent as to dim, weaken or dissipate the mental faculties, and which the testimony shows was clearly untrue as to the donor in this case. A conclusion to the contrary would have been most flagrantly against and unsupported by the evidence, and for which reason no additional time nor space will be devoted to its discussion.

2. In support of argument (2) we are cited to the cases of Bell's Ex'r v. Lawrence, 272 Ky. 439, 444, 114 S. W. (2d) 517; Combs v. Roark's Adm'r, 221 Ky. 679, 299 S. W. 576; and Cochran's Adm'x v. Cochran, 273 Ky. 1, 115 S. W. (2d) 376. In those cases—and numerous others cited in our opinions therein—we set forth the facts necessary to constitute an inter vivos gift, which are: (a) That there must be a competent donor; (b) an intention on his part to make the gift; (c) a donee capable to take it; (d) the gift must be complete, with nothing left undone; (e) the property must be delivered and go into effect at once, and (f) the gift must be irrevocable. In the Bell case we disallowed the alleged gift because we gathered from the evidence, which the opinion set out, that element (b), supra, was absent, and for which reason the alleged gift could not be sustained. The Cochran case is likewise inapplicable and non-supporting of appellants' argument, since the opinion in that case expressly recognized the right of the donor to deliver the gift to some person present, as agent of the donee, to be thereafter delivered to the latter, and which was likewise true in the prior case of Bowles v. Rutroff, 216 Ky. 557, 288 S. W. 312, 313. In the latter case the subject matter of the gift was bank

stock, but we said therein that the gift was incomplete "as the bank stock, was never delivered either to the infant or *to anyone for him*." (Our emphasis.) That expression was and is but a recognition of the rule which we upheld in the case of Goodan v. Goodan, 184 Ky. 79, 211 S. W. 423, wherein we said (quoting from the syllabus, which the opinion sustains): "Where property is delivered to one with the distinct agreement that he shall distribute certain portions of it to others and shall retain a portion for himself, he is not the agent of the donor but is himself a donee, and a trustee for the other donees, and a delivery to him is sufficient."

The conclusion therein reached is in accord with the doctrine as recorded by approved text writers, as is shown in 12 R. C. L. 934, Section 11, wherein it is stated that it is competent for the donor to deliver the property to a third person as agent of the donee, and that the gift will be complete in such case, notwithstanding the constituted agent for the donee may not perform his task by actual delivery to his principal until after the donor's death. The proof in this case clearly shows that the selected individual to make delivery to the absent donees were made agents of the latter by the deceased donor, and which brought the transaction directly within the cited text and our cited opinions. We, therefore, conclude that neither argument made against the validity of the gifts in question is sufficient for that purpose, and the judgment upholding them was and is proper.

The next, and by far the most extended and earnestly presented argument for a reversal of the judgment, is directed to that part of it disallowing a fee to plaintiffs' counsel to be paid out of the estate of the decedent. Before entering upon the merits of that complaint we deem it apropos to take a view of the situation and what happened as the inevitable result of this litigation. Plaintiffs were fully aware of the facts relating to the alleged omitted property which they insist constituted a part of the decedent's estate, and which they sought to recover and to share in its distribution as such. They knew about the gifts and the character of property that was disposed of by them, and that knowledge was to the full extent later revealed by the proof taken by the court's commissioner, clearly demonstrating, as we have hereinbefore intimated that the action

to recover the property for the estate would inevitably prove fruitless. In that event the action would be purposeless, since no real estate was to be sold for the proceeds to be divided among the heirs, nor any to be partitioned among them, was involved in the case. Neither was there involved in it any question requiring court action for its adjustment. In such circumstances it would scarcely be possible to imagine a more groundless litigation. Nevertheless, it is strenuously argued—and which is attempted to be supported by the citation of numerous cases from this court—that under the provisions of Section 428 of our Civil Code of Practice plaintiffs had the legal right to file this action for the settlement of the estate of the decedent at the time they did so, and, having legally exercised that right, it inevitably follows (as they also argue) that they are entitled to the allowance of a fee for their attorneys to be paid out of the estate, notwithstanding the action was entirely abortive in augmenting the estate, and which aborting facts were known to plaintiffs at the time they filed their action. It may be conceded for the purposes of this case that plaintiffs did have the right to file the action insofar as it sought a settlement of the involved estate, but we are unable to accept, in the circumstances of the case, the unsound conclusion that the expense of counsel fees to be paid out of the estate necessarily follows the right to maintain the action.

To begin with, allowed counsel fees rest largely in the discretion of the court to which application therefor is made (Harrel v. Yonts, 271 Ky. 783, 113 S. W. (2d) 426), which discretion will not be interfered with unless abused. A number of cases are cited in the Code, supra, to its section 428, where in varied circumstances attorneys' fees were not allowed, although the action sought a settlement of the estate. In all of the cases there collated no allowance of an attorney's fee was approved by this court unless the services rendered by the attorney were necessary and redounded to the benefit of the estate, either in accomplishing some purpose that could be done only by litigation, or other resulting benefits to be shared equally by its distributees. Consequently, the case chiefly relied on (Smith v. Graham, 274 Ky. 144, 118 S. W. (2d) 194), for a reversal of the judgment in the respect now under consideration has no application for the reason that the settlement action there involved

not only sought the distribution of decedent's net personal property among his distributees, but it also sought the sale of a considerable amount of real estate and a division of its proceeds among the heirs according to their interest. Therefore, the case was one permitting the allowance of an attorney's fee—payable out of the estate—for services rendered in the necessary litigation required in the distribution among the heirs of decedent's real estate. We have seen that no such relief was sought in this case, and for which reason the opinion referred to is no authority for the position of counsel in the instant case.

Moreover, Section 489 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes—as this court has interpreted it in the cases cited in the notes following it— is clearly applicable *to the facts of this case,* and, as we conclude, is determinative of the right to the allowance of an attorneys' fee sought in this case. The section says: "In actions for the settlement of estates, or for the recovery of money or property held in joint tenancy, coparcenary, or as tenants in common, if it shall be made to appear that one or more of the legatees, devisees, distributees or parties in interest have prosecuted for the benefit of others interested with themselves, and have been at trouble and expense in conducting the same, it shall be the duty of the court to allow such person or persons reasonable compensation for such trouble, and for necessary expenses, in addition to the fees and costs; said allowance to be paid out of the funds recovered before distribution, the persons interested having notice of the application for such allowance."

The cases in the notes construe that section as applicable to allowed attorneys' fees in such actions where the recovery of property due the estate is sought, and the section itself expressly provides that such allowances—including, of course, attorneys' fees—are "to be paid out of the funds recovered before distribution." That provision necessarily implies that in such an action, though successful and entitling plaintiff to an allowance for his attorney, yet such an allowance must be paid out of the "funds recovered." The corollary is, that the estate should not be taxed with such an allowance except to the extent of "funds recovered," which in this case was zero, plus a probable diminishment of

·the estate to the extent of defendants' incurred costs in their defense. We have employed the expression "such cases" in applying Section 489, supra, of our Statutes, by which is meant those cases that are fruitless, and that were known to be barren ab initio. To approve the allowance as herein requested, in the proven circumstances, would introduce a discordant note in the proceedings of, and a rebellious factor in, the carefully selected group of rules for the advancement of the right and the suppression of wrong.

As illustrating our interpretation of the intent and purpose in the enactment of Section 489 of our Statutes an extreme case might be cited where an interested sharer (whether creditor or distributee) in the estate for distribution filed what he characterized as a settlement suit, with no other purpose or prospect of furthering the interest of all parties than bringing into the distribution fund of only an admitted item of $1. The expense of the litigation would greatly exceed that amount, and the net sum for final distribution would be reduced by that excess. All consideration of fairness and justice loudly proclaims that no such result should be approved; but that on the contrary the inaugurator of the trifling litigation should be compelled to look alone to the additional fund recovered for such extraordinary expense as is here involved.

We deem further discussion of the arguments advanced by plaintiffs' counsel unnecessary, and since we have concluded that neither of them is sufficient to authorize a reversal of the judgment, it is affirmed.

The whole Court sitting, except Judge Perry, who was absent.