**Judith H. TERWILLIGER, Appellant,**

v.

**Thomas E. TERWILLIGER, Appellee.**

No. 1999–SC–1064–DG.

Supreme Court of Kentucky.

Jan. 17, 2002.

As Modified Feb. 11, 2002.

Jeffrey D. Stamper, Connelly, Kaercher & Stamper, Louisville, Alan M. Patterson,

III., Connelly, Kaercher & Stamper, Louisville, for appellant.

Michael L. Allen, Louisville, for appellee.

STUMBO, Justice.

In October 1993, Thomas Terwilliger, filed a Petition for Dissolution of Marriage, seeking to end his seventeen-year marriage to Judith Terwilliger, the Appellant herein. Mr. Terwilliger drafted a marital settlement agreement providing for custody, visitation, and support of the couple's two minor children, as well as division of the couple's marital property and debts. The parties then signed this agreement, both acting *pro se*, at Mr. Terwilliger's urging.

The Terwilligers owned several closely-held corporations which were subject to division as marital property. Mr. Terwilliger represented to Mrs. Terwilliger that those corporations were experiencing financial difficulties, and particularly that TransAmerica Cable d/b/a Mid–America Cable ("MAC") was nearly bankrupt, overdrawing at the rate of $100,000.00 per day. Based upon Appellee's representations, and his assertion that she needed to act quickly or risk losing her home to creditors, Mrs. Terwilliger agreed to accept the following as her portion of the marital property settlement: the marital home, valued at $67,000.00 and subject to a $51,000.00 mortgage; a Hyundai automobile valued at $1,800.00; some $2,550.00 in other cash and/or assets; unencumbered stock equaling 10% of the companies owned by the couple, which Mr. Terwilliger valued at $11,000.00; and some $6,000.00 in credit card debt. Mr. Terwilliger was to receive 90% of the stock of the corporations, which he valued at $100,000.00, as well as the corporate debt; a houseboat on which he was residing; a 1989 Hyundai automobile valued at $3,000.00; and a computer. Within two weeks of the signing of the settlement agreement and before the divorce decree was entered, Mr. Terwilliger was representing to a potential buyer that MAC was worth 1.7 million dollars.

The final decree of dissolution was entered on January 6, 1994, incorporating by reference the marital settlement agreement signed by Mr. and Mrs. Terwilliger. Less than one month after the divorce decree was entered, Mr. Terwilliger entered an agreement to sell MAC, for approximately 1.6 million dollars, to be paid in stock and cash. On December 8, 1994, Mrs. Terwilliger moved to reopen the decree of dissolution and modify the settlement agreement pursuant to CR 60.02 and KRS 403.250. Specifically, she argued that the property division that she had agreed to in the settlement was procured through fraud, misrepresentation, lack of full disclosure, and overreaching on the part of Mr. Terwilliger.

Appellant's motion to reopen the decree was granted. On December 8, 1997, after holding a hearing, the family court modified the property division, awarding Mrs. Terwilliger $384,166.50 (equaling one-half of the profits realized from the sale of MAC, less monies that she had previously received from the sale, and setting aside $200,000.00 to Mr. Terwilliger as separate, non-marital property, invested by him in the business).

Mr. Terwilliger appealed the modification to the Court of Appeals, arguing, among other things, that his actions did not constitute a "fraud affecting the proceedings" as contemplated by CR 60.02(d) and thus that the reopening was improper. The Court of Appeals noted the family court's finding that Appellee had (1) convinced his wife to proceed without counsel, (2) that he had prepared the settlement agreement, and (3) that he had convinced

his wife that the corporations were near bankruptcy and that she needed to sign the settlement agreement in order to prevent the possibility of losing her home to creditors. However, citing *Rasnick v. Rasnick*, Ky.App., 982 S.W.2d 218 (1998), the court held that, while disturbing, Appellee's conduct did not constitute "fraud affecting the proceeding" within the meaning of CR 60.02(d), and, therefore, the reopening was improper. On this basis, the Court of Appeals reversed the family court's order modifying the property settlement. Mrs. Terwilliger now appeals to this Court.

In *Rasnick v. Rasnick*, Ky.App., 982 S.W.2d 218 (1998), Mr. and Mrs. Rasnick, in contemplation of divorce, met with both an attorney and an accountant to discuss the consequences to their prior financial planning of their impending divorce. The accountant informed the court that he had reviewed with the couple, in detail, their financial interests, holdings, partnerships and approximate net worth. During the meeting with legal counsel, Mr. Rasnick left the room specifically to allow Mrs. Rasnick to consult freely with the attorney. Additionally, the Rasnick's had filed joint tax returns, fully disclosing their annual income over the three years preceding their divorce, and Mrs. Rasnick admitted that she had seen and signed those forms. Subsequent to the divorce, Mrs. Rasnick moved to reopen the property settlement and child support provisions of the agreement on the basis of, among other things, CR 60.02(d), "fraud affecting the proceedings." Her contention was that she had been led to believe that the parties' net worth was far less than it really was and that she was fraudulently induced into giving up a disproportionate share of the parties' accumulated property.

█ The Court in *Rasnick* held that nondisclosure of assets in a divorce proceeding does not constitute "fraud affecting the proceedings" within the meaning of CR 60.02(d). The *Rasnick* decision draws a distinction between fraud intrinsic to the proceedings, such as perjury or nondisclosure during pretrial discovery which causes injury to a single litigant, and "extrinsic" fraud, which, the Court held, constitutes "fraud affecting the proceedings." In reexamining the *Rasnick* decision, which relies primarily upon decisions from other jurisdictions, this Court finds that the definition of "fraud affecting the proceeding" utilized by the Court in *Rasnick* is an overly restrictive conception of CR 60.02(d). It is the finding of this Court that fraud on a party is, in fact, "fraud affecting the proceedings." As Appellant notes, by filing a settlement agreement with knowingly undervalued marital assets, Mr. Terwilliger used the proceedings as a tool to defraud his wife.

Whatever popularity the distinction between intrinsic and extrinsic fraud may have enjoyed in the past, the judicial tide is turning against the distinction in favor of equity. According to the leading authority on the Kentucky Rules of Civil Procedure,

> As a general proposition [fraud affecting the proceedings] relates to what is denominated 'extrinsic' fraud. This covers fraudulent conduct outside of the trial which is practiced upon the court, or upon the defeated party, in such a manner that he is prevented from appearing or presenting fully and fairly his side of the case.

> The distinction between extrinsic and intrinsic fraud has been widely criticized and has been rejected by more recent [federal] decisions.

7 Kurt A. Philipps, Jr., *Kentucky Practice*, CR 60.02, cmt. 6 (5th Ed.1995). Our rule, however, does distinguish between fraud affecting the proceedings as discussed

herein, and the presentation of perjury or falsified evidence, which is clearly a fraud upon the court. This distinction is important because the latter can be raised only "not more than one year after the judgement," CR 60.02, while the former must be "made within a reasonable time." Thus, it appears that fraud perpetrated in the courtroom or through testimony under oath is subject to a one-year limitation while fraud occurring outside the courtroom that interferes with presentation of the losing party's evidence to the extent that he or she is "prevented from appearing or presenting fully and fairly his side of the case" is not subject to that limitation. 7 Kurt A. Philipps, Jr., *Kentucky Practice*, CR 60.02, cmt. 6 (5th Ed.1995). Philipps goes on to say: "It may be said the language specifying [fraud upon the proceeding] is quite broad and allows for flexibility in the determination of what constitutes 'fraud affecting the proceedings' where the net effect would cause an unjust judgment to stand." *Id.* While finality of judgment is a laudable goal, it cannot take precedence over the fair and equitable resolution of disputes.

In *Burke v. Sexton*, Ky.App., 814 S.W.2d 290 (1991), Mr. Burke's attorney drafted a marital settlement agreement, which Mrs. Burke signed without benefit of counsel. The agreement gave Mr. Burke essentially all of the couple's assets, and relieved him of any child support or maintenance obligations. Mrs. Burke received a vehicle, custody of the couple's minor child, and waived notice of further proceedings. After signing the agreement, Mr. Burke led his wife to believe that he was no longer pursuing a divorce, thus the divorce and property settlement became final without Mrs. Burke's knowledge. Mrs. Burke subsequently brought suit to reopen the settlement, which motion was granted and the settlement was found to be unconscionable. On appeal by Mr. Burke, the Court of Appeals found this sort of situation to fall under CR 60.02(d) as a "fraud affecting the proceedings." *Burke* does not differ significantly from the case at bar. While in both cases a fraud was perpetrated against a party to the dispute, the ultimate result was a fraud against the court. Both in the case at bar, and as noted by the court in *Burke*, allowing the original decree to stand would be a miscarriage of justice. *Id.* at 292.

In *McMurry v. McMurry*, Ky.App., 957 S.W.2d 731 (1997), Mrs. McMurry's CR 60.02(d) motion to reopen was found to have been properly denied by the trial court. Mrs. McMurry alleged that she had relied to her detriment upon her husband's misrepresentations concerning the true value of the couple's marital assets. The court, however, denied the motion to reopen because Mrs. McMurry failed to show that her husband had attempted to or had concealed or misrepresented any information concerning the couple's finances. Implicitly, had such evidence been produced, Mrs. McMurry would have been entitled to a reopening of the settlement agreement pursuant to CR 60.02(d). Mrs. Terwilliger has produced evidence of fraud by her husband, and the trial court found that evidence persuasive.

■ Mrs. Terwilliger also appeals the decision by the trial court to set aside $200,000.00 of the proceeds from the sale of MAC as the separate property of Mr. Terwilliger. Mr. Terwilliger asserted that he had invested his own separate funds, originating from the settlement of a lawsuit in Michigan, which arose prior to the marriage. In support of this contention, Mr. Terwilliger submitted a note issued by MAC to himself for $200,000.00. However, the note was created in March or April of 1994, and backdated to September 1988, which was prior to the settlement from

which he claims the $200,000.00 arose. He also submitted a copy of the release of the Michigan claim, which indicates that the claim was settled for $275,000.00, payable to Mr. Terwilliger and a Mr. Tera, but does not specify the amount of money going to each payee. Finally, Mr. Terwilliger admitted that he had failed to produce a canceled check or deposit slip for $200,000.00, but submitted a canceled check payable to MAC in the amount of $75,000.00, and another document evidencing a $75,000.00 payment to MAC, which he claims to have been part of the $200,000.00 investment of his separate funds into the corporation. Mrs. Terwilliger stated that she had not been aware of a $200,000.00 settlement and testified that Mr. Terwilliger had specifically told her that his part of the settlement of the Michigan claim was $30,000.00, and that Mr. Tera was getting the bulk of the settlement proceeds. In response, Mr. Terwilliger testified that in 1988, as part of the Michigan settlement, he had received checks for $35,000.00 and $200,000.00. He did not recall if he had told Judith about the $200,000.00, in part because he was precluded from disclosing the terms of the settlement, but he assumed that they had discussed it in private.

■ The presumption in Kentucky is that all property acquired during the course of the marriage is marital property, unless the property can be shown to have originated in one of the excepted ways outlined in KRS 403.190(2). A party claiming that property acquired during the marriage is other than marital property, bears the burden of proof. KRS 403.190(3), *Brosick v. Brosick*, Ky.App., 974 S.W.2d 498 (1998). While the word does not appear in the statute, judicial construction of KRS 403.190 has given rise to the concept of "tracing." *Chenault v. Chenault*, Ky., 799 S.W.2d 575 (1990). In

*Chenault*, this Court recognized that tracing to a mathematical certainty is not always possible, noting that: "While such precise requirements for nonmarital asset-tracing may be appropriate for skilled business persons who maintain comprehensive records of their financial affairs, such may not be appropriate for persons of lesser business skill or persons who are imprecise in their record-keeping abilities." *Id.* at 578.

In *Chenault*, this Court rejected the trial court's finding that Ruby Chenault had failed to adequately trace her nonmarital assets into assets held at the time of divorce. The facts in *Chenault*, however, differ dramatically from the facts in this case. Ruby Chenault came to her marriage with a home worth $14,000.00, cash and securities worth $21,000.00, and some additional inherited stock. Over the course of the Chenault's fifteen (15) year marriage, both parties worked at low paying jobs. It was Ruby's testimony that she had purchased CDs and otherwise reinvested her separate property, though she was unable to provide documentary evidence. In holding that Ruby had sufficiently traced her separate property into assets held at the time of divorce, this Court noted Ruby's own testimony, as well as the fact that there was no other possible source of the funds at issue, since both spouses had held low paying jobs throughout the marriage. In the case of the Terwilligers, Tom was an experienced business person, juggling the assets and liabilities of a number of corporations and orchestrating complex business deals. As such, he would be expected and/or required to keep detailed and accurate records, and it is certainly reasonable to require him to maintain and to produce records to establish his claims of nonmarital property being injected into the business, beyond backdated notes and unexplained deposit slips for varying

amounts. Mr. Terwilliger is clearly a skilled business person with extensive record keeping experience. As such, it does not appear that he is the sort of person that the Court sought to protect in *Chenault* from excessively stringent tracing requirements. Additionally, while the Chenaults had no other likely source for the funds claimed by Ruby Chenault as nonmarital, Tom Terwilliger had money flowing in and out of his various corporations from any number of sources. Based upon the trial court's finding of fraud by Mr. Terwilliger, it appears that Mr. Terwilliger was not found to be a credible witness. Thus, the setting aside of the $200,000.00 to Mr. Terwilliger appears to be the result of a misconception by the trial court of the tracing requirements, rather than a finding that Tom Terwilliger was more credible than Judith Terwilliger in their conflicting testimony over the origin of the $200,000.00. Thus, the trial court erred in setting aside the $200,000.00 as Mr. Terwilliger's separate property based upon the evidence presented. While *Chenault* recognized the potential difficulties of tracing and sought to relax the draconian requirements laid down in prior case law, it did not do away with the tracing requirements altogether.

In sum, the trial court's reopening of the settlement agreement herein was proper under CR 60.092(d). We affirm as to the division of the profits from the sale of MAC. However, we remand to the trial court to reconsider the issue of whether the claimed nonmarital share is sufficiently established.

This case is reversed and remanded to the trial court for action consistent with this opinion.

COOPER, GRAVES, JOHNSTONE, and WINTERSHEIMER, JJ., concur.
KELLER, J., concurs in part and dissents in part, by separate opinion, with LAMBERT, C.J., joining that opinion.

KELLER, Justice, concurring and dissenting.

I would reverse the decision of the Court of Appeals and reinstate the entire judgment of the Jefferson Circuit Court. Thus, while I concur in the part of the majority opinion which holds that the trial court properly set aside the property settlement agreement and reconsidered property division issues in light of evidence of Appellee's overreaching, I dissent from the part of the majority opinion that remands the case to the trial court for it to "reconsider" the $200,000.00 it awarded to Appellee as separate, nonmarital property.

The majority simply ignores its role as a reviewing Court[1]—as well as the trial court's factual finding that the $200,000.00 in question represented Appellee's separate, nonmarital investment—and reaches its own conclusions as to witness credibility. The majority's view of the evidence is conspicuous—"Thus, the trial court erred in setting aside the $200,000.00 as Tom's separate property based upon the evidence presented."[2] Instead of labeling the trial

---

1. *See* CR 52.01:

   In all actions tried upon the facts without a jury ... the court shall find the facts specifically and state separately in its conclusions of law thereon and render an appropriate judgment ... *Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses* ....

(emphasis added). *See also Largent v. Largent*, Ky., 643 S.W.2d 261, 263 (1982) ("The trial court is the finder of fact ..., and the judgment of the trial court may not be reversed unless the findings are clearly erroneous.").

2. Majority Opinion at 64 S.W.3d 821 (2001).

court's findings as clear error and remanding the case for the trial court to treat the $200,000.00 as marital property and to reconsider its previous division of marital property, however, the majority distances itself from its fact-finding and compounds its errors.

Unable to explain the fact that the trial court, after reviewing the evidence, reached a different conclusion, the majority rationalizes the trial court's findings as "the result of a misconception by the trial court of the tracing requirements, rather than a finding that Tom Terwilliger was more credible than Judith Terwilliger in their conflicting testimony over the origin of the $200,000.00."[3] Of course there is not a shred of evidence in the record to support this assertion, and the primary authority from this Court addressing the tracing of assets is not particularly prone to "misconceptions" about the process because it *removed* hypertechnical proof requirements and vested trial courts with the discretion to determine the adequacy of evidence tracing nonmarital assets to assets owned at the time of dissolution.[4] The majority's "solution" is to *create* unnecessary complexity by suggesting that trial courts must examine tracing evidence using a "sliding scale" approach that apparently requires trial courts to adjust proof requirements to account for a party's

business acumen and financial position. Having done everything but actually nudge and wink, the majority then remands the case to the trial court for it to "reconsider the issue of whether the claimed nonmarital share is sufficiently established."[5]

Because I recognize both our position as a reviewing court that, particularly in cases such as this, should give due deference to the trial court's findings when they are supported by substantial evidence,[6] I accordingly dissent from this second part of the majority opinion.

Contrary to the majority's characterization, the trial court's Findings of Fact, Conclusions of Law, and Order do not equivocate or express any doubts regarding Appellee's proof as to his $200,000.00 nonmarital investment in Mid–America Cable. In fact, the trial court found, *by clear and convincing evidence,*[7] and after "consider[ing] the evidence presented, the arguments of counsel, and being otherwise sufficiently advised," that (1) "Prior to the marriage the instant Petitioner was also the petitioner in litigation taking place in Michigan and which later was settled for $275,000.00"; (2) "[T]he money he received in settlement of his Michigan tort claims, $200,000.00, became the initial investment in the corporation. This investment is the

---

**3.** *Id.* at 821.

**4.** *Chenault v. Chenault*, Ky., 799 S.W.2d 575, 579 (1990):

> Accordingly, we shall adhere to the general requirement that nonmarital assets be traced into assets owned at the time of dissolution, but relax some of the draconian requirements heretofore laid down. We take this position, in part, in reliance upon the trial courts of Kentucky to detect deception and exaggeration or to require additional proof when such is suspected.
> *Id.*

**5.** Majority Opinion, *supra* note 2 at 821.

**6.** *See Marcum v. Marcum*, Ky., 779 S.W.2d 209, 212 (1989) ("[D]omestic cases require a greater degree of deference to the determinations made by trial courts.").

**7.** Although the trial court evaluated the evidence under a "clear and convincing evidence," standard, I believe that KRS 403.190 requires only that the trial court be convinced of an asset's character by a preponderance of the evidence. *See infra* notes 20–34 and accompanying text.

undisputed *non-marital property* of Petitioner" (emphasis added); and (3) "[T]he marital interest of the parties in the sale is $938,333.00, with the *non-marital investment* of $200,000.00 being restored to the petitioner" (emphasis added). Later, in the "conclusions of law" section, the trial court recognized—and cited—the KRS 403.190(3) presumption that all property acquired during the marriage is marital and correctly observed that a party seeking to overcome the presumption bears the burden of proving that he or she acquired the property pursuant to an exception listed in KRS 403.190(1). The trial court then concluded that "Petitioner made an initial non-marital investment of $200,000.00 in the corporation."

Although the majority opinion characterizes these findings as the result of the trial court's improper application of the tracing requirements, this assertion is inextricably intertwined with the majority's own factual determinations. Specifically, the majority concludes that the trial court could not possibly have found credible Appellee's testimony regarding the $200,000.00 invested in the corporation because the trial court clearly found Appellant's testimony more credible than Appellee's when it determined that the original property settlement agreement resulted from overreaching on Appellee's part.[8] This overly myopic view illustrates why appellate courts should not make credibility determinations and, more importantly, overlooks the fact that a fact-finder can believe portions of a witness's testimony without endorsing that testimony wholecloth. Perhaps the best evidence that the trial court properly performed its fact-finding function is the fact that it rejected Appellee's claims that other funds—e.g., an additional portion of the purchase price of the corporation and the down payment on the parties' residence—and tangible property—e.g., a speedboat and some tools—also constituted his nonmarital property. In doing so, the trial court found the evidence as to each item of claimed nonmarital property insufficient to overcome the KRS 403.190(3) presumption.

Additionally, I must admit that I cannot discern the standard utilized or established by the majority for the "tracing" of nonmarital property. While professing to follow *Chenault v. Chenault*[9] and paying homage to *Chenault's* declared relaxation of the "draconian" requirements of the tracing of nonmarital assets set forth by earlier cases,[10] the majority sends a loud and clear signal to family law practitioners and the trial bench that—in a certain class of unspecified cases which, coincidentally, mirrors those cases where a majority of this court disagrees with the trial court's factual findings—nothing less than a verified audit conducted in accordance with generally accepted accounting principles

---

8. Majority Opinion, *supra* note 2 at 821 ("Based upon the trial court's finding of fraud by Mr. Terwilliger, it appears that Tom was not found to be a credible witness.").

9. *Supra* note 4.

10. *Id.* at 577:
   This Court granted discretionary review of the decision of the Court of Appeals which imposed stringent requirements upon appellant, Ruby E. Chenault, who sought to "trace" the proceeds of nonmarital property at the time the marriage was dissolved. In effect, the Court of Appeals held that at the time of dissolution, a party undertaking to prove the nonmarital character of property must do so by documentary evidence and with near mathematical precision. We believe such a requirement is beyond the mandate of KRS 403.190 and contrary to sound public policy.
   *Id.*

will suffice.[11] I also see no justification for the majority's holding that trial courts must apply different proof requirements based upon the business success, or lack thereof, and financial position of a claimant. I agree that a trial court may find the fact that a claimant has kept detailed and accurate records in the past of other similar matters relevant to its decision whether a claimant has overcome the KRS 403.190(3) presumption by demonstrating his or her right to nonmarital property. However, I cannot agree that a claimant's wealth or business success, standing alone, imposes an additional requirement upon the claimant to produce detailed and accurate records.

In *Chenault*, this Court relaxed the tracing requirements because of its faith in trial courts' ability to make factual determinations regarding the character of assets [12] and its recognition that heightened proof requirements "may promote marital disharmony by placing a premium on the careful maintenance of separate estates." [13] Today's majority opinion gives no deference to the trial court's finding and adopts a heightened proof requirement that is flagrantly in opposition to the *Chenault* holding.

KRS 403.190(3) establishes a presumption that all property acquired during the marriage is marital property.[14] The marital presumption, however, is rebuttable and may be overcome "by a showing that the property was acquired by a method listed in [KRS 403.190(2)]." [15] This legislatively-created presumption is the genesis of the judicially created "tracing requirement." [16] While a great deal of confusion has arisen regarding this "tracing requirement," it simply means that, "[w]hen the original property claimed to be nonmarital is no longer owned, the nonmarital claimant must trace the previously owned property into a presently owned specific asset." [17] If the claimant does so, then the

---

11. *See* Majority Opinion, *supra* note 2 at 820 ("[Tom Terwilliger] would be expected and/or required to keep detailed and accurate records, and it is certainly reasonable to require him to maintain and to produce records to establish his claims of nonmarital property being injected into the business, beyond backdated notes and unexplained deposit slips for varying amounts."). It should be noted that Tom Terwilliger's nonmarital claim stems from a settlement he received in a civil case prior to his marriage to the Appellant. The parties were married in 1976 and the final hearing on the division of the parties' marital property was held in 1997. Thus, after a lapse of time of more than twenty-three (23) years, the majority requires Tom Terwilliger to produce detailed and accurate records to prove his nonmarital property claims. How many people can meet this onerous requirement? Very few, I would posit.

12. *See Chenault v. Chenault, supra* note 4.

13. *Id.* at 578.

14. KRS 403.190(3) ("All property acquired by either spouse after the marriage and before a decree of legal separation is *presumed* to be marital property, regardless of whether title is held individually or by the spouses in some form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, and community property." *Id.* (emphasis added)).

15. KRS 403.190(3) ("The presumption of marital property is *overcome* by a showing that the property was acquired by a method listed in subsection (2) of this section." (emphasis added)); *Underwood v. Underwood*, Ky. App., 836 S.W.2d 439, 441 (1992) ("This presumption may be *rebutted* by clear and convincing proof that the property was acquired by, amongst other means, 'gift, bequest, devise, or descent.' " (emphasis added)).

16. 15 L. Graham & J. Keller, Kentucky Practice, Domestic Relations Law § 15.10 (2nd ed. West Group 2000) (hereinafter "Graham & Keller").

17. *Id.*

trial court assigns the specific property, or an interest in specific property, to the claimant as his or her nonmarital property. In contrast, a claimant fails to meet the tracing requirement when he or she is able to show only that he or she brought nonmarital property into the marriage because he or she has spent his or her nonmarital assets in a nontraceable manner during the marriage. Thus, the trial court will not assign the property to the claimant as nonmarital property,[18] and will consider the claimant's nontraceable, nonmarital contribution only as a factor when it makes a just division of the parties' marital property.[19]

**18.** *See Brunson v. Brunson,* Ky.App. 569 S.W.2d 173, 176 (1978). *See also* American Law Institute Principles of the Law of Family Dissolution: Analysis and Recommendations, § 4.03, Comment (c) (Proposed Final Draft, Part I, February 14, 1997) ("When tracing yields only ambiguous results the property is typically treated as marital.").

**19.** *See Angel v. Angel,* Ky.App., 562 S.W.2d 661, 664–665 (1978) ("[W]hen the nonmarital property of one spouse is expended as a part of the 'team effort' for the benefit of the marriage, that amount should be considered by the trial court in measuring the contribution of each spouse to the acquisition of the marital property."); Graham & Keller, *supra* note 16 at § 15.11.

**20.** Ky.App., 551 S.W.2d 823 (1977).

**21.** *Id.* at 825 ("The burden is on the Appellant to prove by clear and convincing proof that he acquired his interest by gift."); *Brosick v. Brosick,* Ky.App., 974 S.W.2d 498, 502 (1998) ("We recognize that KRS 403.190(3) creates a presumption that all property acquired during the marriage is marital. This presumption must be rebutted by clear and convincing evidence."); *Underwood v. Underwood, supra* note 15 at 441 ("According to KRS 403.190(3), '[a]ll property acquired by either spouse after the marriage and before a decree of legal separation is presumed to be marital property....' This presumption may be rebutted by clear and convincing proof that the property was acquired by, amongst other means, 'gift, bequest, devise, or descent.' ");

A second question which this Court must answer concerns what evidentiary standard must be met to rebut the marital presumption and successfully trace nonmarital property. In a number of cases, beginning with *Browning v. Browning,*[20] the Court of Appeals has held that the burden is on the claimant of nonmarital property to rebut the marital presumption by "clear and convincing evidence."[21] However, the Court of Appeals, itself, has expressed doubts about the validity of the clear and convincing evidence standard [22] and, perhaps, even rejected it.[23] I believe that this Court should also reject it.

*Munday v. Munday,* Ky.App., 584 S.W.2d 596, 598 (1979) ("We believe, under the circumstances, it is incumbent on the appellee to furnish convincing evidence that the appellant received the $17,300 or otherwise it will be considered premarital property."); *Adams v. Adams,* Ky.App., 565 S.W.2d 169, 171 (1978) ("The question of whether property is considered marital or nonmarital is dependent on whether the property was a gift or was received as a result of consideration. To overcome the presumption that the property is marital, clear and convincing proof must be presented to show that the property was given as a gift.").

**22.** *Underwood v. Underwood, supra* note 15 at 445 n. 1 ("The 'clear and convincing evidence' standard, as used in this context, apparently originated with the *Browning* case and has since been cited in numerous opinions of this Court..... Although we recognize that this standard has been applied in Kentucky for quite some time, *we question its validity.*" (citations omitted) (emphasis added)).

**23.** *Id.*:

We are unable to see why the division of property in a dissolution of marriage proceeding warrants such a high standard of proof, arising to the same level of importance as the termination of parental rights. Surely the most important issue in any divorce case is the custody of children; yet, we do not require a party to show by clear

The issue in *Browning* was whether the property in question was a gift or was received for consideration,[24] and the Court, without any reasoning, discussion, or citation to authority, declared that "[t]he burden is on the [claimant] to prove by clear and convincing proof that he acquired his interest by gift."[25] However, immediately prior to its declaration of the clear and convincing evidence standard necessary to rebut the marital presumption, the Court cited to *Bowman's Adm'rs v. Bowman's Ex'r*[26] in support of its definition of "gift."[27] And, this reliance on *Bowman's Adm'rs v. Bowman's Ex'r*, albeit for the ostensible purpose of defining a gift, reveals, perhaps, the reason that the Court in *Browning* applied a clear and convincing evidence standard to the tracing of nonmarital property.

In *Bowman's Adm'rs v. Bowman's Ex'r*, the Court stated the burden of proof and the evidentiary standard for proving an inter vivos gift:[28]

> Were the appellants here asserting that the money loaned, as evidenced by the notes, were gifts, the burden of showing same certainly rests upon them. In *Bell's Ex'r et al. v. Lawrence et al.*, 272 Ky. 439, 114 S.W.2d 517, we held that

evidence of a gift inter vivos must be clear, convincing and free from reasonable doubt.[29]

Apparently, the Court in *Browning* merely took the evidentiary standard for an inter vivos gift as stated in *Bowman's Adm'rs v. Bowman's Ex'r* and adopted it as the standard for rebutting KRS 403 .190(3)'s martial presumption. It does not appear from the opinion itself that the *Browning* Court gave any independent consideration to the appropriate evidentiary standard with respect to the marital presumption. Accordingly, I believe that this Court should give little or no precedential weight to the standard adopted by the Court of Appeals in *Browning* and perpetuated, but questioned, in its subsequent decisions.

While a clear and convincing standard may be necessary with respect to inter vivos gifts because of the substantial risk of fraud,[30] nonmarital claims generally do not present a substantial risk of fraud, and the clear and convincing standard is inappropriate in the tracing context. The primary issue in the tracing of nonmarital property is not whether the claimant originally owned, or acquired, nonmarital prop-

---

and convincing evidence that living with that individual would be in the child's best interest. It seems unreasonable then to require a party to rebut the presumption that property is marital by producing clear and convincing evidence..... [W]e believe that requiring "clear and convincing evidence" to rebut the "marital property" presumption is improper[].....

**24.** *Browning v. Browning, supra* note 20 at 825 ("The question of non-marital or marital property rests on whether or not the Harkins property was a gift or was received as a result of a consideration.").

**25.** *Id.*

**26.** 301 Ky. 694, 192 S.W.2d 955 (1946).

**27.** *Browning v. Browning, supra* note 20 at 825.

**28.** An *"inter vivos gift"* is "[a] gift made during the donor's lifetime and delivered with the intention of irrevocably surrendering control over the property." Black's Law Dictionary 697 (7th Ed.1999).

**29.** *Bowman's Adm'rs v. Bowman's Ex'r and Adm'r, supra* note 26 at 957.

**30.** *Hale v. Hale*, Ky. 189 Ky. 171, 224 S.W. 1078, 1079 (1920) ("It is equally true that, since gifts of this character furnish a ready means for the perpetration of fraud, the evidence necessary to establish all of the essentials to complete them must be clear and convincing....").

erty but rather whether the nonmarital property can be traced into presently owned specific property. Accordingly, I see no reason to impose an unnecessary burden upon nonmarital claimants.

Like the Court in *Chenault*, I have confidence that Kentucky's trial courts will be able to detect fraudulent claims of nonmarital property and deny them.[31] Additionally, I would observe that KRE 301 requires that we give the marital presumption the effect intended by the statute,[32] and KRS 403.190(3) places the burden of going forward with the evidence and the risk of nonpersuasion on the nonmarital claimant.[33] Placing the full burden of proof on the nonmarital property claimant adequately reduces the risk that a fraudulent claim will escape the fact-finder's detection. If a claimant fails to satisfy the trial court by a preponderance of evidence that the claimant's previously owned nonmarital property[34] is now represented, in whole or part, by a presently owned specific asset, the claimant has not met his or her burden and accordingly will not be assigned nonmarital property.

Although I do not believe KRS 403.190(3) requires a claimant to demonstrate the character of an asset by clear and convincing evidence, I find it significant to this Court's review of the trial court's findings that the trial court applied this heightened evidentiary standard in this case. While it is difficult to precisely define any evidentiary standard, "this approach requires the party with the burden of proof to produce evidence substantially more persuasive than a preponderance of evidence, but not beyond a reasonable doubt."[35] Thus, the trial court was clearly convinced by the evidence that Appellee sufficiently established his entitlement to the claimed nonmarital share. As the trial court's findings are supported by substantial evidence, I would affirm the trial court's judgment in all respects, including its assignment of nonmarital property to the Appellee.

Finally, I would note that the majority opinion appears to remand the case to the trial court only for the limited purpose of "reconsider[ing] the issue of whether the claimed nonmarital share is sufficiently established." Of course, if the trial court ignores all of the hints in the majority opinion and again finds that Appellee sufficiently established his claim, the trial court would have no reason to reconsider its division of marital property. If, upon reexamination, however, the trial court finds that Appellee failed to rebut the KRS 403.190(3) presumption that the $200,000.00 in question is marital property, it would need to reconsider its previous division of marital property.[36] According-

---

31. *See supra* note 4.

32. Robert G. Lawson, The Kentucky Evidence Law Handbook § 10.05 at 549 (3rd Ed.1993).

33. *Id.* ("[KRS 403.190(3)] is a clear indication of legislative intent to shift to the party against whom the presumption operates a full burden of proof—the burden of going forward with the evidence and the risk of nonpersuasion[].")

34. Of course the claimant will first be required to satisfy the trial court of the original ownership of nonmarital property; otherwise, there is no nonmarital property to trace. *See* KRS 403 .190(2) & (3).

35. *Fitch v. Burns*, Ky., 782 S.W.2d 618, 622 (1989).

36. *See* KRS 403.190(1); Graham & Keller, *supra* note 16 at § 15.1 ("KRS 403.190(1) requires a trial court to assign each spouse the nonmarital property belonging to him or her. The court may divide marital property between the parties only after that assignment."); *Id.* at § 15.11 ("At best, Mrs. Brunson's assertion that she made a significant monetary contribution to the marriage would increase her share of marital property.").

ly, at the very least, if the majority wishes to impose its findings of fact upon the trial court, it should broaden the scope of its remand to allow the trial court to properly divide the marital estate.

LAMBERT, C.J., joins this opinion, concurring in part and dissenting in part.