RENDERED: MARCH 5, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NOS. 2018-CA-0783-MR
AND
2019-CA-0226-MR

JEAN KLEINERT RUEFF                                          APPELLANT


                    APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE DEANA "DEE" MCDONALD, JUDGE
                    ACTION NO. 14-CI-501193


ROBERT CHARLES RUEFF                                          APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, KRAMER, AND MAZE, JUDGES.

MAZE, JUDGE:  These appeals arise from the same circuit court action and have

been designated to be heard together.  We have therefore elected to dispose of the

two appeals in a single opinion.  The issues advanced in Appeal No. 2018-CA-

0783-MR center upon the refusal of the family court to reopen the judgment

dissolving the parties' marriage pursuant to CR[1] 60.02 to correct and/or set aside portions of the settlement agreement incorporated into the decree. Appeal No. 2019-CA-0226-MR stems from the refusal of the family court to grant a motion to supplement the appellate record with updated appraisals of the property at issue in Appeal No. 2018-CA-0783-MR. Finding no reversible error in the arguments advanced in either appeal, we affirm the decisions of the Jefferson Family Court.

Both appeals stem from the same factual background. The 1985 marriage of the parties was dissolved by a decree entered in 2017. Incorporated into that decree was a mediated settlement agreement executed on February 1, 2017. Pertinent to the matters before us, the settlement agreement: 1) equally divided a joint account at Stock Yards Bank; 2) assigned appellant Jean Rueff (Wife) as her sole property an $80,000 whole life insurance policy; and 3) divided the parties' real property. Several months after the entry of the decree, Wife moved to reopen the judgment pursuant to CR 60.02 alleging: 1) that there was a typographical error in the settlement agreement concerning the balance of the joint account at Stock Yards Bank; 2) that appellee, Robert Rueff (Husband), failed to provide her the whole life insurance policy as set out in the agreement; and 3) that the parties' agreement with respect to the real property assigned to Husband must

---

[1] Kentucky Rules of Civil Procedure.

be set aside due to recently obtained information which was intentionally and fraudulently withheld from her during settlement negotiations.

Concerning the first of these contentions, Wife alleged that while the agreement reported the value of the joint bank account as $1,600.00, she had since learned the actual value of the account was $16,000.00.  The family court found that at the time of the agreement Husband provided Wife with copies of bank statements showing that the value of the account was, in fact, $1,600.00.  The family court also noted that Husband had provided the court with a copy of a check to Wife for $800.00 representing her interest in the account as provided for in the agreement.  The family court also found persuasive Husband's argument that because the account was joint, Wife had free access to all information regarding the account if she questioned the information Husband had provided.  On the basis of these findings, the family court concluded that Husband had complied with the terms of the agreement and denied Wife's motion to reopen that portion of the settlement agreement.

Next, the family court considered Wife's contention that Husband failed to provide her the $80,000.00 life insurance policy provided for in the agreement. Wife argued that Husband had tendered a check in the amount of $69,758.89 rather than the $80,000.00 value listed in their agreement.  Husband alleged that the $69,758.89 figure represented the cash surrender value of the

policy; that he had initially misunderstood that the cash surrender value was what was required under the agreement; and that he had since executed all documents necessary to transfer the policy to Wife. The family court concluded that the agreement indicated that Wife was to receive ownership of the policy as well as its entire cash value of $80,000.00. The family court ordered Husband to pay wife an additional $10,241.11, the difference between the tendered amount of $69,758.89 and $80,000,00.

Finally, the family court rejected Wife's contention that the agreement must be reopened to address Husband's intentional and fraudulent withholding of information concerning the true value of the real property surrounding his business. Wife alleged that at the time of negotiations concerning their real property, Husband was aware of an expected deal to build a new soccer stadium in Butchertown close to the properties assigned to Husband in the agreement. In response to this contention, Husband argued that the court had appointed an expert to perform valuations on all properties owned by the parties and that the expert had provided documentation concerning the value of the Butchertown properties to both parties. The family court found Wife's reliance upon newspaper articles regarding the stadium printed after the parties' agreement insufficient to support her claims of intentional withholding of vital information. Specifically, the family court found that while Wife had provided the court with information indicating that

the real property in Butchertown might be enhanced by the building of the soccer stadium, she failed to produce evidence supporting her claim that Husband, his counsel, or the court-appointed expert had any knowledge of the proposed stadium at the time the agreement was negotiated and executed. Accordingly, the family court concluded that Wife had failed to meet the stringent standards for reopening a judgment under CR 60.02.

Thereafter, both parties moved to alter or amend the previous order. Wife argued that the judgment should be reopened to revisit the division of realty, contending that not only were the properties improperly valued at the time of their agreement, but that three separate pieces of property were never assigned under the agreement. Husband argued that he had complied with the agreement by tendering the case value of the insurance policy and that the $10,241.11 difference had been left "as a contingency plan for paying the premium for the policy." The family court denied Wife's motion in its entirety and granted Husband's motion to the extent that if no premiums had been withdrawn for the monies remaining in the account, he owed Wife no additional sums. However, the family court concluded that Husband remained liable to Wife for any amounts which had been withdrawn from the $10,241.11.

Both parties moved to amend the order on the CR 59 motion. Wife objected to what she perceived to be a statement that she had been represented by

counsel during settlement negotiations. In denying Wife's motion, the family court clarified that it acknowledged that Wife no longer employed counsel at the time of the second mediation and execution of the settlement agreement. However, the court also emphasized that Wife had independent counsel available to her at times during the litigation process and had the opportunity to engage new counsel if she so chose.

Husband's motion to amend addressed a perceived misconception that the Butchertown properties had not been assigned to him in the settlement agreement and thus remained joint property. Relying upon Husband's submission of a quitclaim deed in which Wife relinquished her interest in the properties pursuant to the settlement agreement, the family court amended its previous order to clarify that the properties had been assigned to Husband under the agreement and that Wife's interest in those properties had in fact been conveyed to Husband. Appeal No. 2018-CA-0783-MR followed entry of that order.

While that case was pending in this Court, Wife moved the family court pursuant to CR 75.08 to modify the record to reflect the most current appraisals on the Butchertown properties. Wife argued that because the updated appraisals were material to the issue before the appellate court, the record was inaccurate or was being misstated unless they were included. The family court disagreed, holding that it was improper to supplement the record with information

not in existence at the time the matter was adjudicated and thus denied the motion to supplement. Appeal No. 2019-CA-0226-MR followed the entry of that order. We will discuss the issues advanced in each of these appeals separately.

APPEAL NO. 2018-CA-0783-MR

Wife advances in this appeal essentially the same issues which she argued in her motion to reopen: 1) that because she was misled as to the true value of the Butchertown properties, the decree should be reopened and the properties sold, with an equal division of the proceeds; 2) that the decree should be reopened to correct a misstatement as to the value of the joint account at Stock Yards Bank; and 3) that Husband should be required to return and restore the cash value of the insurance policy to reflect his wrongful withdrawal of funds.

Wife predicates her contentions regarding the Butchertown properties on claims of overreaching by Husband, with emphasis on the fact that she was without assistance of counsel during the negotiations and execution of the settlement agreement. Like the family court, we fail to be persuaded that Wife's contentions merit reopening the judgment.

We commence by reiterating that appellate courts review a trial court's denial of a CR 60.02 motion for abuse of discretion. *Richardson v. Brunner*, 327 S.W.2d 572, 574 (Ky. 1959). The familiar test for abuse of discretion is whether the trial court's decision is "arbitrary, unreasonable, unfair, or

unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). An appellate court will affirm the lower court's decision on appeal unless there is found a "flagrant miscarriage of justice[.]" *Gross v. Commonwealth*, 648 S.W.2d 853, 858 (Ky. 1983).

Turning to an application of those principles to the issues advanced in this appeal, we perceive no "flagrant miscarriage of justice" to have occurred in this case. Wife first argues that the family court abused its discretion in refusing to reopen the decree to allow a reappraisal of the Butchertown properties reflecting their true value at the time of the February 1, 2017 agreement. Citing *Burke v. Sexton*, 814 S.W.2d 290, 292 (Ky. App. 1991), Wife insists that her lack of counsel at the second mediation so undermined the fairness of the resulting agreement as to result in an "unconscionable and lopsided division of the Butchertown properties." We are not so persuaded.

The main thrust of Wife's argument is that the settlement agreement was the product of Husband's overreaching and lack of full disclosure. As found by the family court, the record simply does not bear that out. Of particular pertinence in this regard, the court noted that the values for all properties owned by the parties had been established by a court-appointed expert who provided the documentation for his evaluations to both parties. Acknowledging that the proposed soccer stadium may enhance the value of the Butchertown properties, the

family court nevertheless emphasized no evidence had been produced that Husband, his counsel, or the court-appointed expert had any knowledge of the location of the proposed stadium at the time the agreement was negotiated and signed.

This brings us back to Wife's contention that her lack of counsel placed her in such a disadvantaged bargaining position as to render the agreement unconscionable. During the dissolution proceedings, Wife had been represented by four different attorneys, a forensic accountant, and a financial planner. While the fourth of these attorneys had withdrawn prior to the execution of the settlement agreement, Wife's financial planner accompanied her to the final mediation, utilizing spreadsheets and other materials prepared by her former counsel. Importantly, there is no suggestion that Wife, an educated businesswoman, was coerced into going to the mediation without counsel or that she was in any way coerced into entering into the agreement.

The facts of this case are a far cry from those found to be so lopsided as to require a finding of "overreaching . . . to the point of unconscionability" as described in *Burke*. *Id*. In *Terwilliger v. Terwilliger*, the Supreme Court of Kentucky reiterated this Court's conclusion that the facts at work in *Burke* fell within the dictates of CR 60.02(d) as a fraud on the proceedings:

> In *Burke v. Sexton*, Ky. App., 814 S.W.2d 290
> (1991), Mr. Burke's attorney drafted a marital settlement

> agreement, which Mrs. Burke signed without benefit of counsel. The agreement gave Mr. Burke essentially all of the couple's assets, and relieved him of any child support or maintenance obligations. Mrs. Burke received a vehicle, custody of the couple's minor child, and waived notice of further proceedings. After signing the agreement, Mr. Burke led his wife to believe that he was no longer pursuing a divorce, thus the divorce and property settlement became final without Mrs. Burke's knowledge. Mrs. Burke subsequently brought suit to reopen the settlement, which motion was granted and the settlement was found to be unconscionable. On appeal by Mr. Burke, the Court of Appeals found this sort of situation to fall under CR 60.02(d) as a "fraud affecting the proceedings." *Burke* does not differ significantly from the case at bar. While in both cases a fraud was perpetrated against a party to the dispute, the ultimate result was a fraud against the court. Both in the case at bar, and as noted by the court in *Burke*, allowing the original decree to stand would be a miscarriage of justice. *Id*. at 292.

64 S.W.3d 816, 819 (Ky. 2002). Thus, the Supreme Court made clear that CR 60.02 is designed to provide relief for reasons of an extraordinary nature. Moreover, CR 60.02 "requires a very substantial showing to merit relief under its provisions." *Ringo v. Commonwealth*, 455 S.W.2d 49, 50 (Ky. 1970). Relief under the rule is to be granted only upon a clear showing of extraordinary and compelling equities. *Webb v. Compton*, 98 S.W.3d 513, 517 (Ky. App. 2002). *See also Gross*, 648 S.W.2d at 856.

Wife simply failed to make anything approaching such a showing in this case. The fact that Wife may have made a bad bargain does not render the

agreement unconscionable, *Peterson v. Peterson*, 583 S.W.2d 707, 712 (Ky. App. 1979), nor does the fact that she chose to proceed with only the advice of her financial planner. In short, nothing in this record would allow this Court to conclude that the family court's denial of Wife's request for CR 60.02 relief constitutes a "flagrant miscarriage of justice[.]" *Gross, supra* at 858.

Neither do we perceive an abuse of discretion in the family court's conclusion with regard to the parties' joint account at Stock Yards Bank. Wife claims that although the agreement stated that the balance of that account was $1,600.00, she subsequently learned that the balance was in fact $16,000.00. The family court concluded that CR 60.02 relief was unavailable based upon a finding that, due to the joint nature of the account, Wife had free access to all account information regarding the account and did not have to depend on Husband's disclosures concerning the balance. Thus, the family court concluded that Husband complied with the terms of the agreement as written by his payment of $800.00, representing Wife's share in the account. Based upon the evidence in the record, nothing in that conclusion constitutes an abuse of discretion.

Concerning the account, the settlement agreement provides as follows:

> d. Each party will retain as their sole asset, free and clear from any claim of the other, their individually held bank accounts. The parties have a joint checking account at Stock Yards Bank which has a balance contained therein

-11-

of approximately $1,600. The parties agree this account will be divided equally between them, and thereafter, the account will be closed.

In response to Wife's questioning of the balance in the account based upon her belief that the agreement contained a typographical error, Husband provided bank statements showing that on December 14, 2015, the account balance was $1,674.60; on May 5, 2016, the account balance was $1,674.82; and on February 13, 2017, the account balance was $1,675.21. Thus, while Husband produced account statements showing the value of the account prior to and at the time of the settlement agreement, Wife relied solely on her "belief" that the amount had been recorded incorrectly in the agreement. Coupled with the fact that Wife had equal access to account data by which she could offer evidence to support her "belief" that the balance was actually $16,000.00, and failed to do so, Husband's evidence in the form of bank statements provided ample support for the family court's denial of Wife's motion to reopen. Clearly, there is no basis for a conclusion that the family court's decision was "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *English, supra* at 945.

Finally, Wife argues that Husband has failed to provide her the full $80,000.00 value of the life insurance policy assigned to her in the settlement agreement. The family court actually found in Wife's favor on her contention that the agreement required that she receive the policy as her sole property, free and

clear of any claim or contribution of Husband. Although Husband mistakenly tendered Wife the cash surrender value of the policy, the family court concluded that Wife was entitled to full ownership of the policy and ordered Husband to pay Wife the sum of $10, 241.11 in addition to the cash surrender value of $69,758.89 which he had previously paid. Again, we find no abuse of discretion in the trial court's conclusion that Wife would be made whole by the payment of the additional $10,241.11. And, as Husband argues in his brief, Wife's contentions regarding a policy rider for the parties' oldest son were not presented to the family court and are thus not properly preserved for our review.

In sum, our review of the record convinces us that the family court did not abuse its discretion in refusing to reopen the decree to modify the parties' negotiated settlement agreement.

APPEAL NO. 2019-CA-0226-MR

The single issue advanced in this appeal is that the family court erred in refusing to grant Wife's CR 75.08 motion to correct or modify the record on appeal with updated appraisals of the Butchertown properties at issue in Appeal No. 2018-CA-0783-MR. We affirm.

Wife argued to the family court that the record must be supplemented with an updated appraisal of the Butchertown properties to prevent the record on appeal from being misstated. Wife supported this contention by alleging that the

-13-

settlement agreement executed on February 1, 2017, had been based upon a two-year-old 2015 appraisal and thus did not properly reflect the property's true value at the time the agreement was entered. Wife also asserted that during the Court of Appeals prehearing conference, the parties had agreed to update the appraisal and that she had agreed to pay the $3000.00 cost associated with obtaining an updated appraisal. While Husband acknowledges agreeing that Wife could obtain an updated appraisal at her expense, he denies agreeing that the record could, or should, be corrected to include the new appraisal.

In denying Wife's motion, the family court entered the following findings:

> The information which [Wife] now wishes to supplement the record with was not acquired until November 27, 2018 although it proposes to value the property as of February 1, 2017. This information was not in existence at the time the underlying issue was adjudicated nor was it a fundamental element of the finding of the Court. The Court concluded that the four corners of the agreement of the parties were controlling and there was insufficient evidence offered to support a reopening of the agreement. Thus, although the Court does have the authority to consider the motion to do so, this Court does not have authority to actually supplement the record pursuant to CR 75.08. There has been no misstatement or omission by this Court as the evidence proposed by [Wife] did not exist at the time the February 2, 2018 Order [denying Wife's motion to reopen] was entered.

These findings and conclusions comport not only with the plain language of CR

75.08 but with settled caselaw.

CR 75.08 provides:

It is not necessary for the record on appeal to be approved by the trial court or judge thereof except as provided in Rule 75.12, Rule 75.13, and Rule 76, **but if any difference arises as to whether the record truly discloses what occurred in the trial court, the difference shall be submitted to and settled by that court and the record made to conform to the truth. If anything material to either party is omitted from the record on appeal by error or accident or is misstated therein, the parties by stipulation, or the trial court, either before or after the record is transmitted to the appellate court, or the appellate court, on a proper suggestion or of its own initiative, may direct that the omission or misstatement shall be corrected,** and if necessary that a supplemental record shall be certified and transmitted by the clerk of the trial court. All other questions as to the content and form of the record shall be presented to the appellate court.

(Emphasis added.) Caselaw interpreting this provision consistently confines its

application to situations in which material considered by the trial court has been

inadvertently omitted or misstated.

In *Triplett v. Commonwealth*, our Supreme Court offered the

following explanation as to the strict and limited application of the rule:

New material not considered by the trial court is not admissible and should not be considered by us. At the time the motion was sustained to permit the inclusion of the material it was with the understanding that the material had been offered as evidence upon a hearing in

-15-

the trial court and had been inadvertently omitted from the record, which is the only situation in which our civil rules allow the record to be supplemented, CR 75.08. Such was not the case and **as this new evidence was not a part of the record in the trial court it is stricken from the record here and the case will be reviewed only upon the material considered by the trial court.**

439 S.W.2d 944, 945 (Ky. 1969) (emphasis added.) Similarly, in *First National Bank of Louisville v. First National Bank, Prestonsburg*, this Court reiterated that principle, emphasizing that:

Civil Rule 75.08 provides that a record can be corrected only by the adding of materials or the correction of language which arose at the trial, but were omitted from the record by a mistake or oversight. **This rule does not permit the correction of mistakes on the part of litigants in presenting their case before the trial court.**

567 S.W.2d 316, 318 (Ky. App. 1978) (emphasis added).

Thus, because the family court correctly interpreted and applied CR 75.08, its denial of the motion to correct or supplement the record is affirmed.

CONCLUSION

Finding no error in the decision of the Jefferson Family Court in Appeal No. 2018-CA-0783-MR or in Appeal No. 2019-CA-0226-MR, its orders denying CR 60.02 relief and the CR 75.08 motion to correct or supplement the appellate record are hereby affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Harold L. Storment
Louisville, Kentucky

BRIEFS FOR APPELLEE:

Katherine A. Ford
Louisville, Kentucky