RENDERED:  JUNE 18, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0812-MR


ROBERTA ANN PHELPS                         APPELLANT


|   | APPEAL FROM BOYD CIRCUIT COURT |
|---|---|
| v. | HONORABLE GEORGE W. DAVIS III, JUDGE |
|   | ACTION NO. 19-CI-00123 |


MICHAEL PHELPS                               APPELLEE


OPINION
AFFIRMING IN PART AND
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  CLAYTON, CHIEF JUDGE; K. THOMPSON, AND L. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE:  Roberta Ann Phelps ("Roberta") appeals from the

Boyd Circuit Court's order adopting the report of the Domestic Relations

Commissioner ("DRC").  On appeal, Roberta argues that the trial court erred in

failing to value a retirement account as of the date of the entry of the decree of dissolution and in failing to award Roberta maintenance.

Upon review of the record and applicable law, we agree with Roberta that the retirement account should have been valued as of the date of the entry of the decree of dissolution. Further, we find that the trial court did not abuse its discretion in denying Roberta's request for maintenance. Hence, we affirm in part, reverse in part, and remand for further proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Roberta and Michael Phelps ("Michael") were married on June 30, 2007 and separated in January of 2019. The parties had no children together, although Roberta had adult children from a previous relationship. On January 17, 2019, Roberta filed a Petition for Dissolution of Marriage (the "Petition"). Roberta also filed a motion for temporary maintenance, in which she requested a sum of $20,000.00 from Michael "to assist in legal fees and costs and to assist with the standard of living . . . to which she has become accustomed," as well as temporary possession of the marital residence and vehicle.

Before the scheduled hearing on Roberta's motion for temporary maintenance, the parties came to an agreement, which was memorialized in an Agreed Order (the "Agreement"). As part of the Agreement, Roberta received a net sum of $20,000.00 from Michael's retirement account held through his

employer, American Electric Power ("AEP") (the "Retirement Account"). The parties further agreed that the total amount received by Roberta would be credited to her as a distribution from any award that she ultimately received from the court.

On June 28, 2019, Roberta filed a motion requesting an additional $15,000.00 to be paid to her from the Retirement Account. Michael objected, noting that, in a period of a little more than three months, Roberta had spent the entirety of the initial $20,000.00, while she had sworn under oath that she had only $3,222.00 in monthly expenses. Michael further requested an accounting of the monies that Roberta had expended.

The trial court subsequently entered a decree dissolving the parties' marriage on November 7, 2019 (the "Decree") and submitted the disputed issues of marital property and debt, as well as Roberta's request for maintenance, to the DRC. The DRC held a final hearing on the merits on September 23, 2019 and, on April 21, 2020, filed a Report and Recommendation (the "Report"). Particularly, the DRC made the following findings of fact and issued the following recommendations regarding the Retirement Account in the Report:

> 15. [Michael] has a retirement account with AEP. As of June 30, 2007, the balance in [Michael's] retirement account was $90,139.11. As of January 7, 2019, the balance was $490,853.20. The contributions to the plan from June 30, 2007 through January 7, 2019 were $107,062.39 in employee contributions and $53,531.26 in employer contributions for a total of $160,593.65.

The nonmarital portion of $90,139.11 is 35.95% of the total amount of "contribution" as of June 30, 2007 ([$]90,139.11 divided by [$]250,732.76). That results in $86,323.30 out of the total increase of $240,120.44 being nonmarital. As a result, the total nonmarital portion of the pension is $176,462.41 and the marital portion being $314,390.79.

[Roberta] received a net of $20,000 (or a gross of $25,000) from [Michael's] pension plan in March 2019.

Based on all of the foregoing, [Roberta] should be awarded 26.89 percent of [Michael's] retirement account as of January 30, 2019 for which a Qualified Domestic Relations Order should enter with each party bearing the burden of the respective gains and los[s]es in the stock market. (In calculating the percentage, the $25,000 was deducted from the amount due as of January 30, 2019.)

Additionally, regarding maintenance, the DRC made the following findings and issued the following recommendations:

16. [Roberta] requested that she be awarded maintenance, stating that she needs $3,000 per month for expenses. She noted that her car payment was $514.91 per month, she needs to rent a place to live, pay for utilities, food, etc.

[Roberta] was employed prior to the parties' marriage and then worked after the parties' marriage. At one time [Roberta] did have thyroid surgery and lost her voice for a short time. She was employed at Cintas where she was making $11.00 per hour. She quit that job. She was also employed at AEP earning $14.00 to $15.00 per hour. She took sick leave and never went back. She was previously in nursing but stated that she dropped out of that. [Roberta] testified that she is physically able to do household cleaning activities. [Roberta] stated that she has not applied for any jobs

-4-

since the parties separated and she has not applied for disability.

She received the $20,000 in March 2019 and then asked for an additional $15,000 less than 90 days later. [Roberta] stated that she gave her daughter some of the money, bought food, paid water bill, etc. [Roberta] denied that she gave any of the money to her son, who died on August 16, 2019. (Based on the testimony, [Roberta's] son had drug issues.) [Roberta] also stated that she owes about $10,000 to Evans Funeral Home and $3,000 to Bellefonte Gardens for her son's funeral bill.

[Michael] testified that he has expenses of over $4,000 per month. He noted that although he made $120,000 in 2018, he has less overtime now as AEP has added a third person to his department. He stated that he earns $42 per hour and works 40 hours per week. [Michael] also testified that he is on medication for high blood pressure and AFIB. He stated that he gave [Roberta] $100 just a few days prior to the hearing.

Based on all of the above, the [DRC] finds that [Roberta] is quite capable of working, she just chooses not to. The [DRC] is also concerned that [Roberta] may have other issues that prevent her from responsibly handling money. There is very little doubt that much of the $30,000 in cash withdrawals and ATM withdrawals probably went to the Greyhound Racetrack in WV.

However, the DRC found that if Roberta was working full time, "she may need some additional short-term monetary help" and recommended that she be awarded the parties' Hyundai Elantra. Further, the DRC recommended that Michael pay off the remaining balance of the car loan, which was determined to be $8,000.00.

-5-

Roberta filed exceptions to the DRC's Report (the "Exceptions") on May 5, 2020. On May 15, 2020, the trial court overruled the Exceptions and adopted the Report in its entirety as an order of the court. This appeal followed.

## ANALYSIS

### a. Standard of Review

We begin with a statement of our standard of review. Under Kentucky Rule of Civil Procedure (CR) 52.01, in an action tried without a jury:

> [f]indings of fact, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a commissioner, to the extent that the court adopts them, shall be considered as the findings of the court.

A factual finding is not clearly erroneous if it is supported by substantial evidence. *Owens–Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998). Substantial evidence is evidence, when taken alone or in light of all the evidence, which has sufficient probative value "to induce conviction in the mind[]" of a reasonable person. *Golightly*, 976 S.W.2d at 414. An appellate court, however, reviews legal issues *de novo*. *Carroll v. Meredith*, 59 S.W.3d 484, 489 (Ky. App. 2001).

### b. Discussion

#### 1. The Retirement Account

We first address Roberta's claim that the DRC erred by valuing the Retirement Account as of January of 2019 rather than the date of the Decree in November of 2019. Kentucky Revised Statutes (KRS) 403.190(2) provides that all property acquired during the course of the marriage is marital property, unless the property can be shown to have originated in one of the excepted ways outlined in KRS 403.190(2). "A party claiming that property acquired during the marriage is other than marital property, bears the burden of proof." *Terwilliger v. Terwilliger*, 64 S.W.3d 816, 820 (Ky. 2002) (citations omitted).

In *Stallings v. Stallings*, the Kentucky Supreme Court addressed whether marital assets should be valued as of the date the parties separated or as of the date of the dissolution decree. 606 S.W.2d 163, 163-64 (Ky. 1980). The Court of Appeals had held that only the values at separation were includable in the marital estate because later increases in value were not the product of the "team or joint efforts" of the parties. *Id*. at 164. The Supreme Court reversed, holding that the concept of "team or joint efforts" is irrelevant to the determination of whether property is marital. *Id*. Rather, all property acquired during a period of separation will be presumed marital unless it fits into one of the exceptions set out in KRS 403.190(2). *Id*. Particularly, the Supreme Court stated that "'[s]eparation' means a legal one granted by a decree entered pursuant to KRS 403.140(2). The language

of the legislature is so definitive it not only does not require, but rather prohibits, us from engrafting any exception based on mere 'actual' separation." *Id.*

In this case, the DRC's findings, as adopted by the trial court, valued the Retirement Account as it existed in January of 2019, almost one year prior to the date of the Decree on November 7, 2019. However, such date is not legally significant, and "KRS 403.190 and *Stallings* . . . both clearly indicate that the correct date for such valuation is the date of the dissolution decree." *Clark v. Clark*, 782 S.W.2d 56, 62 (Ky. App. 1990); *see also Brown v. Brown*, 456 S.W.3d 823, 826 (Ky. App. 2015), *Perry v. Perry*, 143 S.W.3d 632, 633 (Ky. App. 2004), and *Armstrong v. Armstrong*, 34 S.W.3d 83, 86 (Ky. App. 2000) ("[i]t is clear, however, that pension and profit sharing plans should be valued on the date of the divorce decree.")

Thus, the Retirement Account should have been valued as of November 7, 2019, and we reverse this part of the trial court's order. On remand, the parties must provide the family court with evidence upon which the court may rely to establish the value of the Retirement Account as of November 7, 2019.

## 2. Maintenance

Roberta also argues that the trial court erred in denying her request for maintenance. Particularly, Roberta argues that the DRC failed to make any findings as to her "reasonable needs" and whether Roberta could support herself

"through appropriate employment." Pursuant to the relevant provisions of KRS 403.200(1), a family court may award maintenance only upon a finding that the spouse seeking maintenance:

> (a) lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs;
>
> and
>
> (b) is unable to support himself through appropriate employment[.]

After the trial court has made such initial determinations, various factors are to be considered by the trial court in setting the amount and duration of maintenance. *See* KRS 403.200(2)(a)-(f).

An award of maintenance is left to the sound discretion of the court, and a reviewing court will reverse the decision of the court only if the appellant can show a clear abuse of discretion. *Powell v. Powell*, 107 S.W.3d 222, 225 (Ky. 2003). An abuse of discretion occurs when the court's decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000). The family court's findings of fact are conclusive if supported by substantial evidence of probative value. *See Spurlin v. Spurlin*, 456 S.W.2d 683, 685 (Ky. 1970).

Here, the record clearly indicates that the DRC and the trial court properly considered whether Roberta would be able to support herself through

appropriate employment, and Roberta has not shown that the such finding was inadequately supported by the evidence or that the court otherwise abused its discretion.  Thus, we find that the trial court's findings regarding Roberta's entitlement to maintenance were supported by substantial evidence and should not be disturbed.

We note that, as a general rule, a trial court should not make a final decision on whether to award maintenance until after all of the marital and non-marital property has been allocated.  *Owens v. Owens*, 672 S.W.2d 67, 69 (Ky. App. 1984).  Because we are reversing the trial court's division of the Retirement Account, normally we would direct the trial court to reconsider its decision on maintenance in light of any adjustment to the property division.  *See Brunson v. Brunson*, 569 S.W.2d 173, 178 (Ky. App. 1978).

In this case, however, we find no need for the trial court to revisit this issue.  Again, before awarding maintenance, the family court is required to make two findings:  that the party seeking maintenance lacks sufficient property to provide for his reasonable needs and that he is unable to support himself through appropriate employment.  *Gentry v. Gentry*, 798 S.W.2d 928 (Ky. 1990).  In this case, the DRC affirmatively found that Roberta was able to support herself through appropriate employment, and the trial court adopted the DRC's findings.  Based on

-10-

that particular finding, Roberta could not qualify for an award of maintenance under the provisions of KRS 403.200(1), and no further analysis was necessary.

## CONCLUSION

For the foregoing reasons, while we affirm the trial court's decision and judgment regarding maintenance, we reverse the judgment awarding Roberta Retirement Account benefits valued as of January 2019 and remand for further proceedings to introduce additional evidence as to the value of the Retirement Account as of November 7, 2019.

ALL CONCUR.

BRIEF FOR APPELLANT:

MaLenda S. Haynes
Grayson, Kentucky

BRIEF FOR APPELLEE:

Robert T. Renfroe
Greenup, Kentucky